O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| AMANDA SATERIALE, JEFFREY FEINAMN, PAMELA BURNS, PATRICK GRIFFTHS, JACKIE WARREN, HEATHER POLESE, DAN POLESE, FRED JAVAHERI, RICHARD HOLTER, AND DONALD WILSON, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>vs.<br><br>R.J. REYNOLDS TOBACCO CO.<br><br>          Defendant.<br>_____ | Case No. CV 09-8394 CAS (SSx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

## I.  INTRODUCTION & BACKGROUND

On November 16, 2009, plaintiffs Amanda Sateriale, Jeffrey Feinman, Pamela Burns, Patrick Griffiths, Jackie Warren, and Donald Wilson, individually and on behalf of all persons similarly situated, filed suit against defendant R.J. Reynolds Tobacco Company ("RJR").

On May 24, 2010, plaintiffs filed their corrected second amended complaint ("SAC"), alleging claims for: (1) breach of contract; (2) promissory estoppel; (3) unfair

competition under Cal. Bus. & Prof. Code §§ 17200 <u>et seq.</u>; and (4) deceptive practices pursuant to the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 <u>et seq.</u>  In an order issued July 12, 2010 (the "Order"), the Court dismissed plaintiffs' SAC in its entirety, with leave to amend.  <u>See</u> Order at 12.

On August 11, 2010, plaintiffs filed their third amended complaint ("TAC"), alleging claims for: (1) breach of contract; (2) promissory estoppel; (3) unfair competition under Cal. Bus. & Prof. Code §§ 17200 <u>et seq.</u>; and (4) deceptive practices pursuant to the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 <u>et seq.</u>[1]

Plaintiffs allege that beginning in 1991, RJR conducted the "Camel Cash" program, under which it sold Camel cigarettes along with certificates redeemable for merchandise described in catalogs circulated by RJR.  TAC ¶ 2.  Plaintiffs allege that they are smokers 21 and older who either purchased Camel cigarettes and the Camel Cash certificates packaged with those cigarettes, or purchased Camel Cash through secondary market transactions.  TAC ¶ 11.  Plaintiffs allege that they registered for the Camel Cash program by filling out an enrollment form and submitting the form to RJR. TAC ¶ 4.  Plaintiffs allege that RJR accepted and processed their enrollment forms and provided each plaintiff with an enrollment number and one or more catalogs containing merchandise.  TAC ¶ 4.  Plaintiffs allege that the catalogs listed the merchandise available, the number of Camel Cash certificates needed to receive the merchandise, and the procedures to be followed to receive the merchandise.  TAC ¶ 4.  Plaintiffs allege that on October 1, 2006, RJR announced that it would be discontinuing the Camel Cash program.  TAC ¶¶ 5, 32.  The announcement stated:

> As a loyal Camel smoker we wanted to tell you our Camel Cash program
> is expiring.  C-Notes will no longer be included on packs, which means

---

[1] The TAC also includes named plaintiffs Heather Polese, Dan Polese, Fred Javaheri, and Richard Holter.

whatever Camel Cash you have is among the last of its kind.  Now, this isn't happening overnight—there'll be plenty of time to redeem your C-Notes before the program ends.  In fact, you'll have from OCTOBER '06 through MARCH '07 to go to camelsmokes.com and redeem your C-Notes.  Supplies will be limited, so it won't hurt to get there before the rush.

TAC ¶ 33; TAC, Ex. A.  Plaintiffs further allege that beginning in October 2006, before the announced March 2007 termination date specified in RJR's announcement, RJR stopped printing and issuing catalogs, and stated to plaintiffs that it did not have merchandise available for redemption.  TAC ¶ 34.  Plaintiffs allege that RJR terminated its Camel Cash program on March 31, 2007.  TAC ¶¶ 5, 45.

On September 20, 2010, RJR filed the instant motion to dismiss plaintiffs' TAC. On October 25, plaintiffs filed an opposition.  On November 15, 2010, RJR filed a reply. After carefully considering the arguments set forth by both parties, the Court finds and concludes as follows.

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in a complaint.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007).  "[F]actual allegations must be enough to raise a right to relief above the speculative level."  Id. at 1965.

In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them.  Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington,

51 F.3d 1480, 1484 (9th Cir. 1995).  However, a court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  <u>Sprewell</u>, 266 F.3d at 988; <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pac. Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990).

Furthermore, unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (<u>e.g.</u>, facts presented in briefs, affidavits, or discovery materials).  <u>In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.</u>, 102 F.3d 1524, 1537 (9th Cir. 1996), <u>rev'd on other grounds sub nom</u> <u>Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201.  <u>In re Silicon Graphics Inc. Sec. Litig.</u>, 183 F.3d 970, 986 (9th Cir. 1999); <u>Lee v. City of Los Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001).

For all of these reasons, it is only under extraordinary circumstances that dismissal is proper under Rule 12(b)(6).  <u>United States v. City of Redwood City</u>, 640 F.2d 963, 966 (9th Cir. 1981).

Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1401 (9th Cir. 1986); <u>see</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III.  DISCUSSION

### A.   Breach of Contract

In order to state a claim for breach of contract, plaintiffs must allege "the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages." <u>First Commercial Mortgage Co. v. Reece</u>, 89

Cal. App. 4th 731, 745 (2001).

The parties dispute whether the transactions that are alleged to have been entered into between RJR and its customers created a contract. RJR maintains that the TAC, like the SAC, fails to state a breach of contract claim because no contract between plaintiffs and RJR could be formed until a customer submits an order form for specific merchandise and RJR accepts that order. Mot. at 7–8. Plaintiffs argue that the TAC cures the pleading deficiencies identified in the Court's order dismissing the SAC because it alleges, *inter alia*, that

> [p]laintiffs registered for the Camel Cash program by filling out an enrollment form and submitting such a form to defendant. Defendant then accepted and processed each plaintiff with an enrollment number and one or more catalogs containing merchandise. The catalogs listed the merchandise available, the number of certificates needed to receive the merchandise and the procedures to be followed to receive the merchandise.

Opp'n at 4 (citing TAC ¶ 4).[2]

RJR contends that plaintiffs' contract claim fails as a matter of law because enrollment in the Camel Cash program did not conclude a bargain, the alleged contract is too indefinite, and any obligation is illusory. Mot. at 9. First, RJR argues that no contract can exist because further communications between RJR and plaintiffs were

---

[2]In the Court's order dismissing the SAC, the Court found that RJR's provision of Camel Cash certificates did not constitute an offer because RJR is not required to perform a specific act without further communication with plaintiffs. Order at 5. To the contrary, the Camel Cash certificates specifically direct purchasers of Camel Cash to communicate with RJR to order a catalog, and no action was required by RJR without such communication. Order at 5–6. The Court also found persuasive the Ohio Appellate court's decision in Alligood v. Proctor & Gamble Co., 594 N.E.2d 668, 669–70 (Ohio Ct. App. 1991), in which the court found that an advertisement directing consumers to collect points to exchange for savings on catalog orders did not constitute an offer to contract. Order at 6.

necessary before a contract could have been formed.  Mot. at 10–11 (citing Harris v. Time, Inc., 191 Cal. App. 3d 449, 455 (1987)).  Second, RJR contends that the alleged contract lacks sufficiently definite terms to provide a basis for an appropriate remedy because it does not indicate the quantity, type, value, or cost of the goods.  Id. at 11–12 (citing Alexander v. Codemasters Group Ltd., 104 Cal. App. 4th 129, 141 (2002)).  Third, RJR asserts that the alleged contract fails for lack of mutuality because RJR had the right to terminate the Camel Cash program at will.  Id. at 12–13 (citing TAC ¶ 32 ("the breach of contract alleged is not that Reynolds was prohibited from terminating the program but that, during the program's duration, Reynolds had the obligation to perform through the program's termination date.") (emphasis in original); Kowal v. Day, 20 Cal. App. 3d 720, 724 (1971) ("where one party reserves the right of cancellation mutuality is absent.")).

Plaintiffs respond that once RJR accepted plaintiffs' completed enrollment form and provided plaintiffs with an enrollment number and catalog, a contract was formed and RJR was obligated to maintain a reasonable inventory of merchandise redeemable for Camel Cash.  Opp'n at 4–5 (citing TAC ¶ 4).  Plaintiffs argue that to allege the existence of a contract they were only required to communicate with RJR by enrolling in the program, and the additional steps of ordering a specific item of merchandise from the catalog and RJR's acceptance of the order were not necessary.  Id. at 5.  Plaintiffs further assert that the contract does not fail for lack of mutuality because the TAC alleges that "defendant made a deliberate and calculated choice to waive any right to terminate the program 'without notice,'" and promised to perform through March, 2007.  Id. at 8 (citing TAC ¶ 6, 33).  Plaintiffs also rehash their argument that the contract alleged in Alligood is distinguishable, and that the instant case is more analogous to the frequent flyer cases.  Id. at 10–11.[3]

_____

[3]In the alternative, plaintiffs argue that the questions on contract formation at least raise questions of fact that preclude dismissal at this stage.  Opp'n at 21–22 (citing So. Cal.
(continued...)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RJR replies that plaintiffs' receipt of an enrollment number and a catalog is insufficient to create a contract because RJR was not required to perform without further communication between the parties.  Reply at 9–10.  RJR argues that even if the Court considers the Camel Cash certificates together with the enrollment form and the catalog, the promotion was still "an offer to receive offers, an invitation to order from a catalog." Reply at 8 (quoting Alligood, 594 N.E.2d at 669–70 ("Even if we considered the advertisement in conjunction with the Pampers catalog . . . the advertisement and the catalog taken together would not constitute an offer to enter into a contract.  They create only an offer to receive offers, an invitation to order from the catalog.")).  RJR asserts that the actual offer would occur only when a customer submitted a completed order for specific merchandise, and "[t]here would be no enforceable contract until defendant accepted the Order Form . . . ."  Id. at 7 (quoting Leonard v. Pepsico, Inc., 88 F. Supp. 2d 116, 124 (S.D.N.Y. 1999)).  RJR replies that there was no contract to maintain a reasonable quantity of merchandise once plaintiffs were "enrolled" in the Camel Cash program because enrollment did not require RJR to do any specific act with respect to any plaintiff without further communication with that plaintiff.  Id. at 10.  RJR argues that the alleged promise to maintain a reasonable quantity of unspecified goods is too amorphous for a contract to have been formed.  Id. at 11 (citing TAC ¶¶ 31, 53).  RJR further notes that plaintiffs' argument that RJR waived the right to terminate the Camel Cash program by announcing that the Camel Cash program was coming to an end, presupposes the existence of a valid and enforceable contract and does not figure into whether a contract has been formed in the first instance.  Id. at 14 (citing Silva v. Nat'l Am. Life Ins. Co. of Cal., 58 Cal. App. 3d 609, 618 (1976) ("waiver of the terms of a contract must necessarily presuppose the existence of a valid contract. Unless and until a contract exists between the contracting parties it would seem to be illogical to contend

---

[3](...continued)
Painters & Allied Trade Dist. Council No. 36 v. Best Interiors, Inc., 359 F.3d 1127, 1134 (9th Cir. 2004)).

that either party can be said to have waived any of the terms or requirements of the contract.")).

The Court finds that plaintiffs fail to state a claim for breach of contract because the TAC does not allege the existence of a valid contract between plaintiffs and RJR. The Court concludes that the allegations "create only an offer to receive offers, an invitation to order from the catalog." See Alligood, 594 N.E.2d at 669. Even plaintiff Feinman, who alleges that he submitted his Camel Cash coupons along with a completed order form to RJR, fails to state a claim for breach of contract because his submission to RJR constituted an offer and no contract would exist until RJR accepted his order and processed payment. See Leonard, 88 F. Supp. 2d at 124. The Court further concludes that plaintiffs' "enrollment" in the Camel Cash program did not obligate RJR to maintain a reasonable stock of merchandise redeemable for Camel Cash. Plaintiffs' argument that RJR had an obligation to maintain a reasonable stock of merchandise implies that there was a covenant of good faith and fair dealing requiring RJR to maintain a sufficient inventory of items made available in the catalog. See TAC ¶ 4 ("Defendant stated that quantities of merchandise were 'limited', however, principles of good faith and fair dealing required defendant to provide merchandise in reasonable quantities."). For there to be an implied covenant of good faith and fair dealing, however, there must first be a contract between the parties. See Kim v. Regents of Univ. of Cal., 80 Cal. App. 4th 160, 164 (2000) ("Since the good faith covenant is an implied term of a contract, the existence of a contractual relationship is thus a prerequisite for any action for breach of the covenant."). Here, no such contract existed.[4]

_____

[4]At oral argument, plaintiffs pointed to RJR's internal documents purportedly demonstrating that RJR calculated its liability from the Camel Cash program and established a financial reserve to cover its liability as evidence that RJR subjectively believed that it incurred contractual obligations as a result of the program. See TAC ¶¶ 36–42. However, objective manifestations of intent are determinative of the issues of contract formation, "not [the] subjective intent of any individual involved." Roth v.
(continued...)

Moreover, the Court concludes that the instant case is distinguishable from the frequent flyer cases cited by plaintiffs.  In dismissing plaintiffs' SAC, the Court found that the frequent flyer cases were not analogous because those cases involved members who had specifically joined the frequent flyer program and signed user agreements with the airline entitling them to mileage points in exchange for purchasing air travel.  Order at 6 (citing Wolens v. Am. Airlines, Inc., 626 N.E.2d 205, 206 (Ill. 1993); Frequent Flyer Depot, Inc. v. Am. Airlines, Inc., 281 S.W.3d 215, 220, 224–25 (Tex. App. 2009)).  Although plaintiffs allege in the TAC that they enrolled in RJR's Camel Cash program and were sent catalogs, see TAC ¶ 4, nowhere do they allege that they were ever provided with an agreement containing definite terms, conditions and specific rights – e.g., the purchase of airline tickets, upgrades and other specific benefits in exchange for miles.  See Frequent Flyer Depot, 281 S.W.3d at 224–25.  By contrast, plaintiffs in the present case admit that there is no promise that they will be able to redeem their Camel Cash for any specific goods; rather they argue that RJR has some broad obligation to maintain reasonable quantities of unspecified merchandise.  That alleged promise is too indefinite to be enforced.  See Bustamante, 141 Cal. App. 4th at 209 ("Where a contract is so uncertain and indefinite that the intention of the parties in material particulars cannot be ascertained, the contract is void and unenforceable.") (quoting Cal. Lettuce Growers v. Union Sugar Co., 45 Cal. 2d 474, 481 (1955)).

Furthermore, read properly, Frequent Flyer Depot supports RJR's position.[5]  In

_____

[4](...continued)
Malson, 67 Cal. App. 4th 552, 557 (1998); see Bustamante v. Intuit, Inc., 141 Cal. App. 4th 199, 208 ("Mutual consent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.") (internal quotations omitted).  Thus, RJR's internal documents are irrelevant for the purpose of determining whether a contract was formed in the instant case.

[5]Wolens did not consider whether advertising or other promotional language such
(continued...)

that case, the court found that the airline's original promise of frequent flyer rewards was an illusory contract lacking mutuality because the airline reserved the right to change the terms of the program at any time with our without notice. Frequent Flyer Depot, 281 S.W.3d at 224–25. Nevertheless, the court held that the agreement between the airline and its passengers prohibiting the transfer of airline tickets and miles was enforceable because the airline's subsequent performance under the frequent flyer agreements by issuing tickets in exchange for reward points supplied the necessary consideration even if the consideration was illusory when passengers entered into their contracts. Id. at 225 ("It is undisputed that American has issued tickets in exchange for rewards points purchased through Frequent Flyer. With regard to those tickets, then, American has performed under the applicable User Agreements. Thus, even if American's consideration was illusory when it entered into the applicable User Agreements, its subsequent performance under those agreements established consideration, rendering those agreements enforceable."). Just as in Frequent Flyer Depot, RJR's original promise contained on the Camel Cash certificates was illusory and lacked mutuality because RJR had the right to terminate the Camel Cash program at will. See TAC ¶¶ 6, 32. However, unlike Frequent Flyer Depot, plaintiffs allege no facts that give rise to a finding that RJR's subsequent performance provided the necessary consideration because RJR never accepted, and was not required to accept, plaintiffs' offer to issue merchandise in exchange for Camel Cash.[6]

_____

[5](...continued)
as Camel Cash constituted an enforceable contract. See Wolens, 626 N.E.2d at 206 ("the only issue before this court is whether plaintiffs' claim[s] . . . are preempted" by the Airline Deregulation Act).

[6]The Court further notes that its conclusion that no valid contract was formed between RJR and plaintiffs squares with the case law specifically addressing similar advertising promotions. See Alligood, 594 N.E.2d at 669 (Pampers program to collect and redeem Teddy Bear Points for merchandise did not constitute an offer to enter into a
(continued...)

1    Finally, the Court finds that there are no questions of fact that preclude dismissal

2  of plaintiffs' TAC.  See Wall Data Inc. v. Los Angeles County Sheriff's Dept., 447 F.3d

3  769, 786 (9th Cir. 2006) (under California law "contract formation and interpretation are

4  questions of law for the court to determine.") (citing In re Bennett, 298 F.3d 1059, 1064

5  (9th Cir. 2002)).  Accordingly, the Court hereby GRANTS RJR's motion to dismiss

6  plaintiffs' breach of contract claim with prejudice.[7]

7    **B.    Promissory Estoppel**

8    Promissory estoppel functions as a substitute for consideration, allowing recovery

9  in equity when a contractual claim fails for lack of consideration.  U.S. Ecology, Inc. v.

10  California, 129 Cal. App. 4th 887, 904 (2005).  A claim for promissory estoppel requires

11  that the plaintiff allege the following elements: (1) a promise that is clear and

12  unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the

13  reliance was both reasonable and foreseeable; and (4) the party asserting the estoppel

14  was injured by his reliance.  Id. at 907; see also Laks v. Coast Fed. Sav. & Loan Assn.,

15  60 Cal. App. 3d 885, 890 (1976).

16    The TAC alleges that "defendant promised plaintiffs . . . that if they purchased

17  Camel Cigarettes together with Camel Cash and enrolled in the program, defendant

18  would have reasonable, albeit limited, quantities of merchandise available to redeem for

---

[6](...continued)
contract, but was merely an invitation to order from a catalog); Leonard, 88 F. Supp. 2d at
124 (plaintiff's letter, completed order form, and appropriate number of "Pepsi Points,"
merely constituted an offer, and no enforceable contract would exist "until defendant
accepted the Order Form").

[7]The parties dispute whether plaintiffs' contract claim is based on a written contract
or is an implied contract which is barred by the applicable two-year statute of limitations.
See Cal. Civ. Proc. Code § 339(1).  Because the Court finds that the TAC fails to allege the
existence of a contract, the Court need not determine whether the contract was written or
implied.  Furthermore, the Court declines to reach whether plaintiffs sufficiently allege the
other elements of a breach of contract, such as performance or excuse for nonperformance.

Camel Cash."  TAC ¶ 60.  Plaintiffs allege that they relied on this promise to their detriment in purchasing Camel cigarettes, enrolling in the Camel Cash program, and saving Camel Cash certificates.  TAC ¶ 61.  Plaintiffs allege that RJR failed to honor its promise by failing to have merchandise available for redemption and failing to maintain reasonable quantities of merchandise redeemable with Camel Cash.  TAC ¶¶ 62–63.

RJR argues that the TAC fails to state a claim for promissory estoppel for four reasons.  Mot. at 16–19.  First, RJR contends that plaintiffs fail to allege clear and unambiguous terms because the TAC alleges the same terms of the Camel Cash certificates as the SAC.  Mot. at 17 (citing TAC ¶ 26).  RJR argues that plaintiffs cannot allege that RJR ever promised to provide a specific item to Camel Cash holders, see TAC ¶ 31, and that a promise to maintain a reasonable but limited amount of merchandise provides no basis for determining the parties' duties or for assessing damages.  Id. (citing Glen Holly Entm't, Inc. v. Tektronix, Inc., 100 F. Supp. 2d 1086, 1095 (C.D. Cal. 1999) ("a promise that is vague, general or of indeterminate application is not enforceable.")).  Second, RJR contends that a promise to maintain reasonable quantities of merchandise is an implied promise that cannot support a claim for promissory estoppel.  Id. at 18 (citing Constart, Inc. v. Nat'l Distrib. Ctrs., Inc., 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000)).  Third, RJR argues that plaintiffs' alleged reliance on RJR's promise was unreasonable because plaintiffs acknowledge that at the time of the alleged promise, RJR had the right to terminate the Camel Cash program at any time. Id. at 19 (citing TAC ¶¶ 6, 26, 32).  Finally, RJR argues that the promissory estoppel claim fails because plaintiffs incorporate the contract claim into the promissory estoppel claim.  Id. at 19–20.

Plaintiffs respond that the TAC properly pleads a claim for promissory estoppel because it alleges that the contract required enrollment forms and that RJR acknowledged the enrollment forms.  Opp'n at 15 (citing TAC ¶ 14).  Plaintiffs further respond that the TAC alleges that the catalogs contained all of the requisite information about the merchandise, including the cost and the value.  Id. (citing TAC ¶ 4).  Plaintiffs

1  also clarify that they intend to plead promissory estoppel in the alternative to breach of
2  contract.  Id. at 15 n.14.

3      In its reply, RJR repeats the arguments it makes in its motion.  Reply at 17–21.

4      The Court finds that plaintiffs have failed to state a claim for promissory estoppel
5  based on the alleged promise to maintain "reasonable, albeit limited, quantities of
6  merchandise."  See TAC ¶ 60.  RJR's statement in its October 1, 2006 announcement,
7  that the Camel Cash program was not expiring "overnight", and that "there'll be plenty
8  of time to redeem your C-Notes before the program ends", see TAC ¶ 33, is vague, and
9  not "definite enough to provide [the] Court with a rational basis for determining the
10 scope of duty, limits of performance, and basis for assessment of damages."  Glen Holly
11 Entm't, Inc., 100 F. Supp. 2d at 1101 (citing Ladas v. Cal. State Auto. Ass'n, 19 Cal.
12 App. 4th 761, 770 (1993)).  The October 1, 2006 announcement does not imply a clear
13 and unambiguous promise to maintain a reasonable quantity of merchandise for any
14 particularized period of time.  To the contrary, RJR's announcement states: "Supplies
15 will be limited, so it won't hurt to get there before the rush."  TAC ¶ 33.  Such language
16 suggests not only that there was no unambiguous promise to maintain certain quantities
17 of merchandise, but also that it was unreasonable for plaintiffs to rely on the
18 announcement as a promise that RJR would maintain any level of inventory after the
19 date of the announcement.  As a result, the alleged promise made in RJR's October 1,
20 2006 announcement is not enforceable and cannot be the basis of a promissory estoppel
21 claim.  Moreover, because the Court has already concluded that the submission of a
22 completed order form merely constitutes an offer, plaintiffs fail to allege a promise that
23 may substitute for consideration.  See U.S. Ecology, Inc., 129 Cal. App. 4th at 904
24 ("promissory estoppel claims are aimed solely at allowing recovery in equity where a
25 contractual claim fails for a lack of consideration, and in all other respects the claim is
26 akin to one for breach of contract.").  Accordingly, the Court hereby GRANTS RJR's
27 motion to dismiss plaintiffs' claim for promissory estoppel with prejudice.

28

**C.      Unfair Business Practices — Cal. Bus. & Prof. Code §§ 17200 <u>et seq.</u>**

The Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 <u>et seq.</u>, forbids unfair competition, including unfair, deceptive, untrue, or misleading advertising.  The UCL has been interpreted broadly and a plaintiff may succeed by showing that members of the public are likely to be deceived by the defendant's representations.  <u>Paduano v. Am. Honda Motor Co.</u>, 169 Cal. App. 4th 1453, 1468–69 (2009).  Accordingly, a claim under the UCL may be based on false representations or on statements that are accurate but are "couched in such a manner that is likely to mislead or deceive the consumer."  <u>Day v. AT & T Corp.</u>, 63 Cal. App. 4th 325, 332 (1998); <u>see also</u> <u>Linear Tech Corp. v. Applied Materials, Inc.</u>, 152 Cal. App. 4th 115, 134 (2007).  Notably, the UCL does not require that the defendant intended to deceive or injure.  <u>State Farm Fire & Cas. Co. v. Superior Court</u>, 45 Cal. App. 4th 1093, 1102 (1996); <u>see also</u> <u>Paduano</u>, 169 Cal. App. 4th at 1468.  To have standing to bring suit pursuant to § 17200, a plaintiff must "make a twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused by unfair competition."  <u>Peterson v. Cellco P'ship</u>, 164 Cal. App. 4th 1583, 1590 (2008).  Plaintiffs who are alleging unlawful conduct stemming from misrepresentation and deception under the UCL must actually have relied on the defendant's alleged misrepresentation.  <u>See</u> <u>In re Tobacco II Cases</u>, 46 Cal. 4th 289, 326 (2009) (Business and Professions Code section 17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."); <u>see also</u> <u>Durell v. Sharp Healthcare</u>, 183 Cal. App. 4th 1350, 1355 (2010) ("to have standing to bring a claim under the 'unlawful' prong of the UCL, in which the predicate unlawful conduct is based on misrepresentations, as here, the reasoning of <u>Tobacco II</u> is equally applicable and actual reliance is an element of the claim.").

In the TAC, plaintiffs UCL claim is predicated on the allegation that when RJR "announced that it was terminating the Camel Cash program as of March 31, 2007, Defendant represented that holders of Camel cash certificates could redeem their

14

coupons for another six months." TAC ¶ 67. Plaintiffs contend that this representation was deceptive because RJR "did not provide merchandise, or even catalogs containing merchandise, to plaintiffs . . . ." TAC ¶ 67.

RJR argues that plaintiffs lack standing to assert a claim pursuant to the UCL because they cannot allege a loss of money or property as a result of unfair competition. Mot. at 20–21. RJR contends that § 17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL," and plaintiffs cannot allege that they lost any money or property in reliance on RJR's advertisements. Id. at 21 (quoting In re Tobacco II Cases, 46 Cal. 4th at 326). RJR argues that because its October 1, 2006 notice advising customers that it was discontinuing the Camel Cash program informed plaintiffs that Camel Cash was no longer available in cigarette packs, plaintiffs could not have relied on this statement in purchases of cigarettes after the announcement. Mot. at 22 (citing TAC ¶ 33). Similarly, RJR argues that plaintiffs could not have relied on the October 1, 2006 announcement in any of their actions before October 1, 2006. Id.

Plaintiffs respond that they have standing to pursue the UCL claim because they suffered damages when the Camel Cash coupons they had acquired were rendered worthless during the sixth month period prior to the March 31, 2007 termination of the program. Opp'n at 16–17. Plaintiffs argue that RJR's focus on plaintiffs' purchase of cigarettes is misguided because the purchase of cigarettes is not the alleged injury. Id. at 17. Rather, plaintiffs argue that the alleged injury is that plaintiffs relied on RJR's October 1, 2006 announcement and sought to redeem Camel Cash between the time of the announcement and the end of the Camel Cash program in March 2007. Id. at 18.

RJR replies that the injury plaintiffs allege is insufficient to confer standing under the UCL because California law requires plaintiffs to part with an identifiable sum of money or particular item of property formerly belonging to him. Reply at 22 (citing Silvaco Data Sys. v. Intel Corp., 184 Cal. App. 4th 210, 244 (2010)). RJR further replies that the alleged misrepresentation – that Camel Cash could be redeemed for the six

months after the October 1, 2006 announcement – did not render the Camel Cash worthless. Id. at 23. Finally, RJR argues that plaintiffs have conceded that RJR had the right to terminate the Camel Cash program. Id. (citing TAC ¶¶ 6, 26, 32).

The Court finds that plaintiffs do not have standing to maintain their UCL claim. Although plaintiffs allege that they relied on RJR's October 1, 2006 announcement in seeking to redeem their Camel Cash certificates prior to the termination of the program, the TAC does not allege any actual loss of money or property resulting from the announcement. See Silvaco Data Sys., 184 Cal. App. 4th at 244 ("Ordinarily when we say someone has 'lost' money we mean that he has parted, deliberately or otherwise, with some identifiable sum formerly belonging to him or subject to his control . . . . Similarly, when we say someone has 'lost' property we mean that he has parted with some particular item of property he formerly owned or possessed"). Moreover, to the extent plaintiffs contend they lost money or property based on their inability to redeem their Camel Cash certificates in the waning months of the Camel Cash program, such an injury is insufficient to confer standing under the UCL. See Germain v. J.C. Penney Co., No. CV 09-2847 CAS, 2009 WL 1971336, at *6–7 (C.D. Cal. July 6, 2009) (holding that plaintiffs did not have standing under the UCL where they received merchandise which they retained and used, even though they did not receive an advertised free airline ticket).

Moreover, the Court finds that even if plaintiffs had standing to assert their UCL claim, the language in RJR's October 1, 2006 announcement was not likely to deceive consumers. See In re Vioxx Class Cases, 180 Cal. App. 4th 116, 130 (2009) ("In order to obtain a remedy for deceptive advertising, a UCL plaintiff need only establish that members of the public were likely to be deceived by the advertising."). Although the Court recognizes that "whether a business practice is deceptive will usually be a question of fact not appropriate for decision on a motion to dismiss," this is the rare case in which dismissal is appropriate. Yumul v. Smart Balance, Inc., No. CV 10-00927 MMM, 2010 WL 3359663, at *5 (C.D. Cal. May 24, 2010) (quoting Williams v. Gerber Prods. Co.,

552 F.3d 934, 938 (9th Cir. 2008)).  In this case, it cannot be said that a reasonable consumer was likely to believe that RJR would maintain any level of inventory of merchandise redeemable for Camel Cash for any particularized period of time based on the October 1, 2006 announcement.  To the contrary, the announcement explicitly states that the "Camel Cash program is expiring" and that "[s]upplies will be limited."  See TAC ¶ 33.  The same is true of the language on the Camel Cash certificates provided to plaintiffs, which indicates that customers must check catalogs for an expiration date. See TAC ¶ 26.  Because, when read as a whole, the language in RJR's announcements make it impossible for plaintiffs to prove that a reasonable consumer is likely to be deceived, the Court concludes that dismissal of plaintiffs' UCL claim is appropriate. See, e.g., Freeman v. Time, Inc., 68 F.3d 285, 289–90 (9th Cir. 1995) (upholding dismissal of UCL challenge to sweepstakes advertisement where the qualifying language in the advertisement was not hidden or small, appeared immediately next to the representations it qualified, and a reasonable consumer would be put on notice by reading the language).  Accordingly, the Court hereby GRANTS RJR's motion to dismiss plaintiffs' claim pursuant to the UCL with prejudice.

### D.        Consumer Legal Remedies Act — Cal. Civ. Code §§ 1750 et seq.

The Consumer Legal Remedies Act ("CLRA") prohibits unfair or deceptive practices in consumer sale or lease transactions.  Cal. Civ. Code § 1770; see also Paduano, 169 Cal. App. 4th at 1468.  The CLRA forbids, in relevant part, the following conduct: "[r]epresenting that goods or services have . . . uses, benefits, or quantities which they do not have . . . ."; "[a]dvertising goods or services with intent not to supply reasonably expectable demand, unless the advertisement discloses a limitation of quantity"; and "[r]epresenting that a transaction confers or involves rights . . . which it does not have . . . ."  Cal. Civ. Code §§ 1770(a)(5), (10) and (14).  Thirty days before commencing suit, a plaintiff bringing a CLRA claim must provide written notice to the party alleged to have violated the statute and demand that the person or organization rectify the alleged violation.  Cal. Civ. Code § 1782(a).

In the TAC, plaintiffs allege that RJR's October 1, 2006 announcement "represented . . . that Camel Cash certificates could be redeemed for another six months. However beginning in October 2006, defendant did not provide merchandise, or even catalogs containing merchandise, to plaintiffs . . . ." TAC ¶ 77. Plaintiffs allege that had they "known that they would be unable to redeem their Camel Cash for merchandise as represented by defendant, they would not have purchased Camel cigarettes and saved Camel Cash." TAC ¶ 78.

RJR argues that, again, plaintiffs have not alleged that RJR advertised or distributed Camel Cash without intending to honor its Camel Cash program. Mot. at 22–23. To the contrary, RJR contends that the allegations in the TAC demonstrate that RJR had a history of honoring the program. Id. at 23 (citing TAC ¶¶ 34, 37, 43, 45). RJR also argues that its October 1, 2006 announcement terminating the Camel Cash program caused no harm to plaintiffs and therefore cannot support a claim under the CLRA. Id. at 24. RJR argues that because the announcement informed plaintiffs that "C-Notes will not longer be included in packs" and that "whatever Camel Cash you have is among the last of its kind," see TAC ¶ 33, plaintiffs could not have bought Camel cigarettes on or after October 1, 2006 in reliance on the announcement. Id. (citing Buckland v. Threshold Enters., Ltd, 155 Cal. App. 4th 798, 809 (2007)).

Plaintiffs respond that their CLRA claim should be sustained for reasons similar to those that support their UCL claim. Opp'n at 19. Plaintiffs contend that RJR's prior fifteen year course of conduct is relevant to show only: (1) that RJR had a practice of re-ordering merchandise when it exhausted its stock and (2) to contrast RJR's prior course of conduct with its failure to perform from October 2006 through March 2007. Id. at 20. Plaintiffs further argue that Buckland is inapposite because it only applies where a CLRA claim "sounds in fraud." Id. at 20 n.21 (citing Buckland, 155 Cal. App. 4th at 809). Plaintiffs contend that during the sixth month period, RJR encouraged plaintiffs to cash in their certificates when it never intended to honor them. Id. at 21.

RJR replies that plaintiffs' attempt to distinguish Buckland on grounds that its

holding is limited to a CLRA claim that "sounds in fraud" is without merit.  Reply at 24 n.9.  RJR argues that the <u>Buckland</u> court's holding is grounded in the language of Civ. Code § 1780(a), and that in any event, plaintiffs' CLRA claim does "sound in fraud" because it is predicated on RJR's alleged knowingly false statement.  <u>Id.</u>  Accordingly, RJR argues that plaintiffs fail to state a claim pursuant to the CLRA because they suffered no harm as a result of the October 1, 2006 announcement.  <u>Id.</u> at 24–25.

The TAC does not state a claim for deceptive practices pursuant to the CLRA. Again, plaintiffs have not alleged that RJR advertised or distributed Camel Cash without intending to honor the program.  To the contrary, plaintiffs' allegations demonstrate that RJR had a long history of honoring its Camel Cash program.  <u>See, e.g.,</u> TAC ¶¶ 34, 37. Furthermore, as discussed above, RJR's October 1, 2006 announcement does not falsely represent the nature of the Camel Cash program.  Thus, the allegations do not support a conclusion that RJR represented that the certificates had uses that they did not have, advertised them without intending to supply reasonably expectable demand or represented that the certificates conferred rights which they did not confer.  <u>See</u> Cal. Civ. Code §§ 1770(a)(5), (10) and (14).   Accordingly, the Court GRANTS RJR's motion to dismiss plaintiffs' claim for deceptive practices pursuant to the CLRA with prejudice.

## IV.    CONCLUSION

In accordance with the foregoing, the Court GRANTS RJR's motion to dismiss the TAC.  Given that this is plaintiffs' fourth complaint and allegations of other facts cannot "possibly cure the deficiencies" identified in the TAC, the Court dismisses this action with prejudice.  <u>Schreiber Distrib. Co.</u>, 806 F.2d at 1401.

IT IS SO ORDERED

Dated: December 7, 2010

*Christine A. Snyd*

CHRISTINA A. SNYDER
UNITED STATES DISTRICT JUDGE

19