UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL    'O'

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|---|---|---|---|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS): PLAINTIFFS' MOTION FOR CLASS
CERTIFICATION (dkt. 87, filed June 16, 2014)

## I.    INTRODUCTION

On November 16, 2009, plaintiffs Amanda Sateriale, Jeffrey Feinman, Pamela Burns, Patrick Griffiths, Jackie Warren, and Donald Wilson, individually and on behalf of all persons similarly situated, filed suit against defendant R.J. Reynolds Tobacco Company ("RJR"). Dkt. 1. Plaintiffs filed a first amended class action complaint on February 22, 2010, dkt. 21, and RJR moved to dismiss on March 22, 2010, dkt. 24. The Court granted RJR's motion with leave to amend on May 3, 2010, dkt. 31, and plaintiffs filed a corrected second amended class action complaint ("SAC") on May 24, 2010, dkt. 35. RJR moved to dismiss plaintiffs' SAC on May 27, 2010, dkt. 37, and the Court again granted RJR's motion with leave to amend on July 12, 2010, dkt. 46.

Plaintiffs filed the operative third amended class action complaint ("TAC") on August 11, 2010. Dkt. 47. The complaint alleges claims for (1) breach of contract, (2) promissory estoppel, (3) unfair competition under Cal. Bus. & Prof.Code §§ 17200 et seq., ("UCL") and (4) deceptive practices pursuant to the Consumer Legal Remedies Act ("CLRA"), Cal. Civ.Code §§ 1750 et seq. Id.

The gravamen of plaintiffs' complaint is that RJR breached its contractual obligations to plaintiffs—smokers of its Camel brand cigarettes and holders of "Camel Cash" or "C-Notes"—when RJR announced the termination of its Camel Cash loyalty program, but failed to make available limited amounts of merchandise for redemption by plaintiffs with Camel Cash during the final six months of the program.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          'O'

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|----------|------------------------|------|-------------------|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

The Court dismissed plaintiffs' entire TAC with prejudice on December 7, 2010. Dkt. 55. As is relevant here, the Court found that plaintiffs failed to allege the existence of a valid contract, since the allegations created only "an offer to receive offers." Id. The Court also found that plaintiffs failed to state a claim for promissory estoppel, because RJR's October 1, 2006 announcement that it was terminating its Camel Cash program did "not imply a clear and unambiguous promise to maintain a reasonable quantity of merchandise for any particularized period of time." Id. Plaintiffs filed a notice of appeal on January 6, 2011. Dkt. 56.

On July 13, 2012, the Ninth Circuit affirmed dismissal of plaintiffs' UCL and CLRA claims, but vacated dismissal of the breach of contract and promissory estoppel claims. Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 794 (9th Cir. 2012). "In light of the totality of the circumstances surrounding RJR's communications to consumers," id. at 787-88, the Ninth Circuit found that plaintiffs had adequately alleged the existence of an offer to enter into a unilateral contract, id. at 787. Although the court noted that the alleged offer "left aspects of RJR's performance to RJR's discretion," this did not preclude the existence of an offer where plaintiffs alleged "a contract the essence of which was their general right to redeem their Camel Cash certificates, during the life of the program, for whatever rewards merchandise RJR made available, with RJR's discretion limited only by the implied duty of good faith performance," id. at 788.

The court further found that the alleged contract did not fail for indefiniteness, since its terms provided a basis for determining breach and an appropriate remedy. Specifically, the court found that breach would be "readily discernable" where plaintiffs alleged that RJR was "required to make reasonable quantities of rewards merchandise available during the life of the Camel Cash program," but allegedly failed to make any merchandise available. Id. at 789. The court also found that damages might be assessed with reference to RJR's internal documents assigning values to C-Notes, or by looking at "RJR's final rewards catalog and pre-breach performance." Id. at 789.

The court also noted that, had RJR reserved an unrestricted right to terminate the Camel Cash program at will, this reservation might have precluded RJR's communications from constituting an offer and rendered RJR's promise to perform too illusory to be enforceable. Id. at 791. However, the court found that plaintiffs did not allege that RJR reserved an unrestricted right to terminate; rather, plaintiffs alleged only

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:09-cv-08394-CAS(SSx) | | Date | December 19, 2014 |
|---|---|---|---|---|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | | |

that "[c]*ertain* (but not all) of the Camel Cash catalogs state that Reynolds could terminate the Camel Cash program without notice," id. at 791-92.

With regard to promissory estoppel, the court concluded that plaintiffs had adequately alleged a clear and unambiguous promise—namely, "the C–Notes promised consumers that if they saved C–Notes and redeemed them for rewards merchandise in accordance with the catalog, RJR would provide the merchandise." Id. at 792. Moreover, even if this promise were implied, the court found that the promissory estoppel claim could nonetheless proceed under California law.  Id.

After conducting discovery on plaintiffs' two remanded claims, plaintiffs filed a motion for class certification on June 16, 2014.  Dkts. 87, 88.[1]  Plaintiffs' proposed class definition is:

All persons in the United States who, as adult smokers, registered with RJR, collected C-Notes, and held C-Notes as of October 1, 2006, when RJR breached the contract.

Mot. Cert. 10.  Defendants opposed this motion on July 21, 2014, dkt. 103, and plaintiffs replied on August 4, 2014, dkt. 112.[2]

On September 15, 2014, the Court heard argument on both the instant motion for class certification, as well as defendants' concurrently filed motion for summary judgment.  Dkt. 127.  Subsequent to that hearing, the Court requested supplemental

---

[1] On that same date, RJR filed a motion for summary for judgment.  Dkt. 86.  RJR also filed a motion for sanctions on July 10, 2014.  Dkt. 100.  The resolution of these motions are addressed in separate orders.

[2] On September 10, 2014, RJR filed two evidentiary objections to the declaration of Jeffrey Squire, counsel for plaintiffs, and two exhibits attached thereto.  Dkt. 123.  The Court notes that these objections were filed more than two months after plaintiffs lodged the Squire Declaration, and that one of the objections is made to evidence that RJR itself produced.  The Court OVERRULES these objections as moot because the Court does not rely on the objected-to evidence in ruling on plaintiffs' motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**         **'O'**

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|----------|------------------------|------|-------------------|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

briefing from the parties.  Dkt. 130.  Having carefully considered the parties' arguments and supplemental briefing, the Court finds and concludes as follows.

## II.   BACKGROUND

This case arises from a disagreement regarding RJR's obligations to consumers pursuant to its "Camel Cash" program.[3]

RJR began distributing Camel Cash in October 1991.  Mot. Summ. J. at 7; Opp'n Summ. J. at 1.  Camel Cash or "C-Notes" were essentially proofs of purchase affixed to packages of Camel brand cigarettes.  Mot. Summ. J. at 8; Opp'n Summ. J. at 6.  The purpose of the Camel Cash program was to market Camel cigarettes to adult smokers. Answer TAC ¶ 24.  Adult smokers could collect the C-Notes and exchange specified quantities for a variety of items, including non-tobacco merchandise, product, or product coupons.  Id. ¶ 2.  The parties agree that the term "product" refers to cigarettes.  See id. The number of C-Notes required in order to obtain these items varied.  Id. ¶ 29.  The items were advertised in catalogs, which were initially available in print but, as of 2005, were published exclusively online at the Camel brand website.  Mot. Summ. J. at 8; Opp'n Summ. J. at 10.  Each catalog offered a variety of items, and each catalog stated that the items contained within it were only available for redemption with C-Notes for a specified period of time—i.e., when that specific catalog expired.  Mot. Summ. J. at 8; Opp'n Summ. J. at 3.  Although the catalogs expired, the C-Notes themselves did not contain expiration dates and C-Notes could be saved to acquire merchandise or products made available in future catalogs.  See generally Mot. Summ. J.; Opp'n Summ. J. at 7. However, RJR never represented that specific items that were available in one catalog would necessarily be available in subsequent catalogs.  See Sateriale, 697 F.3d at 788-89. Nonetheless, prior to October 2006, each catalog contained at least some items for redemption that were not product or product coupons.  Plaintiffs' Statement of Genuine Disputes ("PSGD") at 5; Squire Decl. Exs. B, C, KK; Canary-Gardner Decl. Exs. 2-13.

---

[3] This discussion is based in part on portions of the record submitted in connection with RJR's motion for summary judgment.  Accordingly, several citations refer to the briefing submitted by the parties in connection with that motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|---|---|---|---|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

In July 2006, RJR decided to discontinue the Camel Cash program, effective March 31, 2007—a decision that the parties agree RJR had a right to make.  See Sateriale, 697 F.3d at 784.  In October 2006, RJR attempted to notify adult smokers that their C-Notes could only be redeemed through March 31, 2007.  Mot. Summ. J. at 10-11; Opp'n Summ. J. at 12-13.  RJR's notification included sending a direct-mail piece to approximately 142,000 adult smokers who had redeemed C-Notes since 2002, hiring an outside firm to telephone those same smokers, and emailing some 600,000 adult smokers on RJR's mailing list.  Id.  The direct mail notice provided:

> As a loyal Camel smoker, we wanted to tell you our Camel Cash program is expiring. C-Notes will no longer be included on packs, which means whatever Camel Cash you have is among the last of its kind. Now, this isn't happening overnight-there'll be plenty of time to redeem your C-Notes before the program ends. In fact, you'll have from October '06 through March '07 to go to camelsmokes.com and redeem your C-Notes. Supplies will be limited, so it won't hurt to get there before the rush.

Mot. Summ. J. at 11; TAC ¶ 33.  From October 2006 through March 2007, C-Notes could only be redeemed for "product or product coupons."  Answer TAC ¶ 2.

## III.   LEGAL STANDARD

"Class actions have two primary purposes: (1) to accomplish judicial economy by avoiding multiple suits, and (2) to protect rights of persons who might not be able to present claims on an individual basis."  Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996) (citing Crown, Cork & Seal Co. v. Parking, 462 U.S. 345 (1983)). Federal Rule of Civil Procedure 23 governs class actions.  A class action "may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied."  Gen. Tel. Co. of the Southwest v. Falcon, 457 U.S. 147, 161 (1982).

To certify a class action, plaintiffs must set forth facts that provide prima facie support for the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  Wal–Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2548 (2011); Dunleavy v. Nadler (In re Mego Fir. Corp. Sec. Litig.), 213 F.3d 454, 462 (9th Cir. 2000).  These requirements effectively "limit the class claims to those fairly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|---|---|---|---|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

encompassed by the named plaintiff's claims." Falcon, 457 U.S. at 155 (quoting Califano v. Yamasaki, 442, U.S. 682, 701 (1979)).

If the Court finds that the action meets the prerequisites of Rule 23(a), the Court must then consider whether the class is maintainable under Rule 23(b). Dukes, 131 S.Ct. at 2548. Rule 23(b)(3) governs cases where monetary relief is the predominant form of relief sought, as is the case here. A class is maintainable under Rule 23(b)(3) where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and where "a class action is superior to other available methods for fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Amchem Products, Inc. v. Windsor, 521 U.S. 591 (1997)). The predominance inquiry measures the relative weight of the common and individualized claims. Id. "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001) (citing Valentino v. Carter–Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996)). In determining superiority, the court must consider the four factors of Rule 23(b)(3): (1) the interests members in the class have in individually controlling the prosecution or defense of the separate actions; (2) the extent and nature of any litigations concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely encountered in the management of a class action. Id. at 1190–1993. "If the main issues in a case require the separate adjudication of each class member's individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Id. (citing 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1778 at 535–39 (3d.1986)).

More than a pleading standard, Rule 23 requires the party seeking class certification to "affirmatively demonstrate . . . compliance with the rule—that is he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." Dukes, 131 S.Ct. at 2551. This requires a district court to conduct "rigorous analysis" that frequently "will entail some overlap with the merits of the plaintiff's underlying claim." Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:09-cv-08394-CAS(SSx) | | Date | December 19, 2014 |
|---|---|---|---|---|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | | |

## IV.   ANALYSIS

### A.   Nature of Plaintiffs' Claims and Issue of Standing

As an initial matter, RJR asserts that plaintiffs cannot certify the class because they lack standing under Article III of the Constitution, and are impermissibly proceeding upon "theories and claims not plead in the operative complaint." Opp'n Class Cert. at 19. With regard to standing, RJR argues that plaintiffs have failed to demonstrate injury-in-fact, because they did not attempt to redeem C-Notes during the final six months of the Camel Cash program. Opp'n Class Cert. at 19. According to RJR, the Ninth Circuit's order vacating dismissal of plaintiffs' contract and promissory estoppel claims compels this conclusion. Id. Similarly, with regard to proceeding upon claims not pleaded, RJR argues that plaintiffs "do not seek certification of the claims the Ninth Circuit found they alleged." Id. at 20. Plaintiffs counter that RJR misconstrues the Ninth Circuit's decision. Pls.' Reply Class Cert. at 6. Further, plaintiffs assert that "[o]ne of RJR's straw man theories is that plaintiffs have somehow changed their theory of the case." Id. at 7.

The Court is unpersuaded by RJR's arguments. The Ninth Circuit found that plaintiffs had adequately alleged the existence of an offer to enter into a unilateral contract, "the essence of which was [plaintiffs'] general right to redeem their Camel Cash certificates, during the life of the program, for whatever rewards merchandise RJR made available, with RJR's discretion limited only by the implied duty of good faith performance." Sateriale, 697 F.3d at 788. Here, plaintiffs seek to certify a class of individuals who could not redeem C-Notes for non-tobacco merchandise during the last six months of the Camel Cash program, when RJR declined to make such non-tobacco merchandise available for redemption. Mot. Class Cert. at 1. If certified, the class seeks to prove that RJR's decision not to supply non-tobacco merchandise amounted to a breach of the duty of good faith performance under the contract. Id. at 2. The Court finds this theory of the case to be consistent with the Ninth Circuit's delineation of plaintiffs' claims.

Further, the Court's concurrently issued order denying RJR's motion for summary judgment resolves the standing issue. There, the Court concluded that RJR's issuance of C-Notes constituted an offer to enter into a unilateral contract, which plaintiffs accepted by purchasing Camel cigarettes and saving C-Notes. See generally Summ. J. Here, RJR does not dispute the fact that the named plaintiffs saved C-Notes. See Opp'n Class Cert.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|---|---|---|---|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

at 3-4 (disputing the type of items for which plaintiffs saved C-Notes, but not the act of saving). Moreover, the harm allegedly suffered by plaintiffs due to RJR's alleged breach was loss of the opportunity to redeem C-Notes for non-tobacco merchandise. Pls.'s Reply Class Cert. at 6. RJR does not dispute that plaintiffs were unable to redeem non-tobacco merchandise during the last six months of the Camel Cash program. Opp'n Class Cert. at 12. Consequently, plaintiffs each suffered an injury-in-fact when RJR allegedly breached the contract by failing to provide non-tobacco merchandise for redemption during the final six months of the program. Accordingly, plaintiffs have standing to represent the proposed class.

**B.      Whether the Class is Ascertainable**

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." Mazur v. eBay, Inc., 257 F.R.D. 563, 567 (N.D. Cal. 2009); O'Connor v. Boeing N. Am., Inc., 184 F.R.D. 331, 319 (C.D. Cal. 1998) ("A class definition should be precise, objective, and presently ascertainable."). An ascertainable class exists if it can be identified by reference to objective criteria, and subjective standards such as a class member's state of mind should not be used when defining the class. Manual for Complex Litigation (Fourth) § 21.222.

Plaintiffs assert that the class is ascertainable because "RJR's corporate records identify approximately 600,000 individuals, with contact information, who enrolled in the Program." Mot. Class Cert. at 11. RJR first counters that "[t]here was no enrollment in Camel Cash." Opp'n Class Cert. at 21. Instead, RJR argues that it maintains a "smoker database" that consists of 600,000 individuals, but that there is no administratively feasible way to determine which of those individuals indicated a Camel brand preference, collected C-Notes, but did not participate in the final promotion "because of the types of rewards that were offered." Id. at 21. According to RJR, this determination would necessitate "mini-trials." Id. Plaintiffs respond that this 600,000 person database consists entirely of individuals who redeemed C-Notes, and that class members may "self-identify themselves during the claims process based on the objective criteria that defines the class." Pls.'s Reply Class Cert. at 9.

The Court finds that the class is ascertainable. RJR acknowledges that "to be eligible to participate in a Camel Cash promotion, an adult smoker had to register with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL                    'O'

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|----------|------------------------|------|-------------------|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

Reynolds' direct marketing database," providing information such as their name, address, and birth date.  Setchell Decl. at 2.[4]  Further, after completing the registration process, "Reynolds provided them with a personal identification number, which allowed them to receive offers and communications from Reynolds . . . ."  Id.  Although RJR asserts that the database was "not brand specific" and "existed well before there were Camel Cash promotions," id. at 2-3, RJR also acknowledges that it maintained an active mailing list ("AML") through which it periodically sent emails to a "defined target group of consumers . . . to whom Camel directed marketing communications," id. at 3.

In this Circuit, "it is enough that the class definition describes a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description."  McCrary v. Elations Co., LLC, 2014 WL 1779243 (C.D. Cal. Jan. 13, 2014) (quoting Moreno v. AutoZone, Inc., 251 F.R.D. 417 (N.D. Cal. 2008) vacated on other grounds, 2009 WL 3320489).  Here, even accepting RJR's assertion that the 600,000 person database is over-inclusive and that personal identification numbers are not connected to the Camel brand, the identification numbers provide an objective basis for identifying potential class members; through a claims process, individuals with identification numbers would be able come forward and identify themselves as holders of C-Notes.

RJR's "mini-trial" argument is similarly unavailing.  Plaintiffs' various reasons for not redeeming the C-Notes between October 2006 and March 2007 are not relevant.  As discussed in greater detail in the Court's predominance analysis, infra, under the contract that plaintiffs seek to enforce, the injury-in-fact is the deprivation of the opportunity to redeem C-Notes for non-tobacco merchandise during the final six months of the program. If plaintiffs prove that RJR had an obligation to provide such merchandise and  RJR's breach of that obligation harmed plaintiffs, then plaintiffs' subjective reasons for not seeking to redeem C-Notes during the final period are of no consequence.

Because the class definition provides an objective basis for identifying the class, the Court concludes that any challenges entailed in the administration of the class are not

---

[4] Joel Setchell is RJR's Director of One-to-One Communications and one of RJR's 30(b)(6) witnesses.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
| --- | --- | --- | --- |
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

so burdensome as to defeat certification.[5]

### C.    Rule 23(a)

#### 1.    Numerosity

Rule 23(a)(1) requires the class to be so numerous that joinder of individual class members is impracticable.  See Fed. R. Civ. P. 23(a)(1).  "Impracticability does not mean impossibility."  Harris v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913 (9th Cir. 1964).  There is no set numerical cutoff  used to determine whether a class is sufficiently numerous; courts must examine the specific facts of each case to evaluate whether the requirement has been satisfied.  See General Tel. Co. v. EEOC, 446 U.S. 318, 329–30, (1980).  However, "[a]s a general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough."  In re ConAgra Foods, Inc., 2014 WL 4104405 (C.D. Cal. Aug. 1, 2014) (quoting Ikonen v. Hartz Mountain Corp., 122 F.R.D. 258, 262 (S.D.Cal.1988) (citing 3B J. Moore & J. Kennedy, Moore's Federal Practice ¶ 23–05[1] (2d ed.1987)).  Plaintiffs assert that RJR's smoker database indicates that the class consists of at least 600,000 members.  Mot. Class Cert. at 12.  RJR counters that "[b]ecause there was no enrollment, there were no 'enrollees,' and the proposed class is a null set."  Opp'n Class Cert. at 21.

The Court finds that the proposed class is sufficiently numerous.  RJR admits that it assigned personal identification numbers to hundreds of thousands of individuals who registered with RJR to receive promotional materials.  See Setchell Decl.  RJR also admits that it sent notification emails to more than 600,000 consumers in September,

---

[5] Despite RJR's contention that "no one 'enrolled' in the Camel Cash program," Setchell Dec. at 2, and plaintiffs' reliance on the term "enrollment," see generally Mot. Class Cert., the Court fails to see a meaningful distinction between "enrollment" and "registration."  The relevant facts are that RJR required consumers to provide their contact information in order to participate in Camel Cash promotions, and then assigned those consumers personal identification numbers, so that class members can self-identify themselves as holders of C-Note as of October 1, 2006.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|----------|------------------------|------|-------------------|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

October, and November of 2006 in an attempt to notify them that the Camel Cash program was ending.  Setchell Dec. at 3.  Moreover, in August 2005 RJR conducted an "Exit Survey" of 1,144 consumers to determine why they were saving C-Notes.  Squire Decl. Ex E.  Even accepting RJR's assertion that identification numbers and email notifications were not tied to participation in the Camel Cash program, this evidence strongly suggests that the class consists—at the very least—of not less than 1,000 individuals.  Accordingly, plaintiffs have satisfied the numerosity requirement.

### 2.    Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury . . . [and] [t]heir claims must depend upon a common contention . . . of such nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Dukes, 131 S.Ct. at 2551 (internal quotation marks and citations omitted).  "What matters to class certification . . .  is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Id.

Plaintiffs argue that the core questions are "how a reasonable person would interpret RJR's offers and the scope of RJR's discretion as to what items it could offer to be redeemed for C-Notes."  Mot. Class Cert. at 11.  In a variation of its standing argument, RJR first counters that the class members have not suffered a common injury, since some collectors of C-Notes might have been satisfied with the cigarettes and coupons for cigarettes offered by RJR.  Opp'n Class Cert. at 23.  Further, RJR argues that the very existence of a contract is not subject to class-wide proof, and that plaintiffs themselves have admitted the possibility of varying interpretations regarding what RJR was required to offer for redemption during the final six months of the program.  Id. at 23.  Plaintiffs respond that the subjective beliefs of C-Note holders are not relevant.  Pls.'s Reply Class Cert. at 12.

The Court finds that the commonality requirement is satisfied.  The answer to the following question will "drive the resolution of the litigation": Did RJR breach the implied duty of good faith performance—and thus, the contract—when it only made available cigarettes and coupons for cigarettes during the final six months of the Camel Cash program?  The answer will turn on interpretation of the language of the C-Notes

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL        'O'

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|---|---|---|---|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

themselves, and will be largely informed by extrinsic evidence in the form of the Camel Cash catalogs issued over the course of the fifteen-year program, which displayed the items that could be redeemed with C-Notes.  See In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig., 270 F.R.D. 521, 530 (N.D. Cal. 2010) ("[P]laintiffs' breach of contract claim will not be proved based on each policyholder's understanding of the terms of the policies, but based on the face of the policy documents themselves.").  Even though class members may not have viewed the same catalogs, it is undisputed that, prior to the final six months of the program, every published catalog contained non-tobacco merchandise for redemption.  Squire Decl. Exs. B, C, KK; Canary-Gardner Decl. Exs. 2-13.[6]  Because the answer to the question of whether RJR breached the contract will resolve this litigation as to all class members, the Court finds that plaintiffs have satisfied the commonality requirement.

### 3.    Typicality

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class."  Wolin v. Jaguar Land Rover North Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"  Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir.1992)).  Thus, typicality is satisfied if the plaintiffs' claims are "reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020.

Plaintiffs argue that typicality is met because each plaintiff and class member saw RJR's communications, collected C-Notes, and could not redeem C-Notes for non-tobacco merchandise between October 2006 and March 2007.  Mot. Class Cert. at 13. Defendants counter that the named plaintiffs' claims are not typical of the class, because some members of the proposed class will not have suffered the same injury—i.e., they may have ceased participating in Camel Cash by October 2006, they collected C-Notes in

---

[6] Both declarations were submitted in connection with RJR's concurrently filed motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL    'O'

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|---|---|---|---|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

order to obtain tobacco merchandise, or they in fact redeemed C-Notes for tobacco merchandise during the final six months of the program.  Opp'n Class Cert. at 25. Plaintiffs respond that the injury is the same, since all class members allegedly had a right to redeem C-Notes for non-tobacco merchandise and all class members could not do so during the final six months of the program.  Pls.'s Reply Class Cert. at 14-15.

The Court finds that plaintiffs' claims are typical of the class.  Here, plaintiffs' claims are not merely "reasonably co-extensive" with those of the absent class members, they are "substantially identical."  If RJR breached the contract by failing to make available non-tobacco merchandise, the effect of that breach—inability to redeem C-Notes for non-tobacco merchandise—is common to all class members.  Accordingly, plaintiffs have satisfied the typicality requirement.[7]

### 4.    Adequacy

To establish adequacy of representation, the issue is whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class."  Hanlon,150 F.3d at 1020.

RJR does not contest adequacy of representation, and the Court finds that the interests of plaintiffs and members of the proposed class are aligned.  Further, there is no dispute that plaintiffs and plaintiffs' counsel have prosecuted and will continue to prosecute the action "vigorously on behalf of the class."  Id.  The adequacy requirement of Rule 23(a) is therefore satisfied.

In accordance with the foregoing, the Court finds that all four requirements of Rule 23(a) have been satisfied.

---

[7] However, as discussed in greater detail infra, the Court declines to certify a nationwide class for breach of contract, instead limiting the class to California. Accordingly, only the following named plaintiffs, who are residents of California, possess claims typical of the class: Fred Javaheri, Dan Polese, and Heather Polese.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL        'O'

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|----------|------------------------|------|-------------------|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

### D.    Rule 23(b)(3)

Under Rule 23(b)(3), class certification is appropriate "if Rule 23(a) is satisfied" and if "the court finds that [1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and that [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc., 244 F.3d 1152, 1162–63 (9th Cir. 2001).

### 1.    Predominance

The predominance inquiry "trains on legal or factual questions that qualify each class member's case as a genuine controversy." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997). The predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a). Id. at 623-34. If common questions "present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication," then "there is clear justification for handling the dispute on a representative rather than on an individual basis," and the predominance test is satisfied. Hanlon, 150 F.3d at 1022. "'[I]f the main issues in a case require the separate adjudication of each class member's individual claim or defense, [however,] a Rule 23(b)(3) action would be inappropriate.'" Zinser, 253 F.3d at 1190 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1778, at 535–39 (1986)). This is because "[i]mplicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." See Valentino v. Carter–Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir.1996).

Because the predominance requirement is "more demanding" than Rule 23(a)'s commonality requirement, the Court determines, for each claim for relief, whether common questions predominate. Amchem, 521 U.S. at 624.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|----------|------------------------|------|-------------------|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

### a.     Breach of Unilateral Contract

#### (i)     Liability

Plaintiffs seek to certify a nationwide class of consumers who were injured when RJR allegedly breached the unilateral contract.  Under California law, a claim for breach of contract consists of the following elements: (1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages resulting from breach.  See, e.g., Claridge v. RockYou, Inc., 785 F. Supp. 2d 855, 858 (N.D. Cal. 2011); First Comm. Mort. Co. v. Reece, 89 Cal.App. 4th 731, 745 (2001).  Examining each element in turn, the Court concludes that common questions predominate as to plaintiffs' claim for breach of contract.

First, whether a contract has been formed is susceptible of common proof.  "In contrast to a bilateral contract, a unilateral contract involves the exchange of a promise for a performance."  Sateriale, 697 F.3d at 785 (citing Harris v. Time, Inc., 191 Cal. App. 3d 449, 237 (1987)).  The offer is accepted by performing, rather than by providing a promise to perform.  See Restatement (Second) of Contracts § 45, cmt. a. (1981).  The question of whether a contract has been formed turns on the objective, rather than subjective, manifestations of the contracting parties.  1 Witkin, Summary of Cal. Law, Contracts § 116 (10th ed. 2005) ("[T]he outward *manifestation* or *expression* of consent is controlling. In other words, mutual consent is gathered from the reasonable meaning of the words and acts of the parties, and not from their unexpressed intentions or understanding.") (emphasis in original).  As discussed in detail in the Court's concurrently issued order denying RJR's motion for summary judgment, whether the statements on Camel Cash constitute an offer to enter into a unilateral contract—and whether plaintiffs accepted that offer by purchasing Camel cigarettes and saving Camel Cash—will be determined with reference to objective criteria.  Moreover, RJR's contention that individualized questions regarding each putative class member's "actual expectations" and "understanding of the terms" of the offer defeat predominance is without merit.  In California, "[i]t is enough that the offeree has knowledge of *the offer,* i.e., knowledge that a particular offer has been made to him or her; it is immaterial that the offeree does not know its precise terms or the nature of the performance called for." 1 Witkin, Summ. of Cal. Law, Contracts 10th (2005) Contracts , § 182 (discussing unilateral contracts) (emphasis in original).  Thus, in light of the objective nature of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|----------|------------------------|------|-------------------|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

contract formation inquiry, individualized proof of the parties' respective states of mind will not be necessary.

The third element, breach, is also susceptible of common proof.[8]  As discussed in the Court's summary judgment order, whether RJR's failure to provide non-tobacco merchandise for redemption constituted a breach will turn upon an interpretation of the language contained on the Camel Cash coupons, as well as extrinsic evidence such as Camel Cash catalogs.  By necessity, all class members will have been exposed to the statements made on Camel Cash, which did not differ materially.  Indeed, although there were many iterations of Camel Cash over the years, the statements uniformly urged consumers to save their Camel Cash for either "goods," "stuff," or "the best" that RJR had to "offer."  See Squire. Decl. Ex. B.  Moreover, to the extent that interpretation of the terms "goods," "stuff," and "the best" might be informed by the Camel Cash catalogs, as noted above, all catalogs issued by RJR prior to October 2006 contained at least some non-tobacco merchandise for redemption.  Accordingly, because common evidence will inform interpretation of the alleged contract's terms—and RJR's alleged breach turns upon that interpretation—breach is susceptible to common proof.

Finally, the fourth element, "damages resulting from breach," is also susceptible of common proof.  Under California law, contract damages must be proximately caused by defendant's breach, meaning that breach must be a "substantial factor" in causing plaintiff's damages.  See U.S. Ecology. Inc. v. State, 129 Cal. App. 4th 887, 909 (2005); Vu v. Cal. Commerce Club, Inc., 58 Cal. App. 4th 229, 233 (1997).  Additionally, contract damages cannot be too speculative.  See McDonald v. John P. Scripps Newspaper, 210 Cal. App. 3d 100, 104 (1989) ("It is fundamental that damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery.").

RJR contends that causation and injury are not susceptible to common proof because the Court will need to ask individualized questions—namely, would each

---

[8] Because the alleged contract at issue is unilateral in nature, and thus plaintiffs are required to accept defendant's offer by performing, the second element of contract formation—plaintiff's performance—is subsumed within the first element.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

putative class member have redeemed Camel Cash during the final six months of the Camel Cash program if non-tobacco merchandise had been offered? See Opp'n Class Cert. at 26-33. RJR misses the mark. Here, plaintiffs' injury is the loss of the opportunity to redeem Camel Cash for non-tobacco merchandise—an injury that does not depend on each class members' subjective intentions. See also First Nat. Mortgage Co. v. Fed. Realty Inv. Trust, 631 F.3d 1058, 1069 (9th Cir. 2011) ("[B]ecause it was [defendant's] breach that took away [plaintiff's] ability to choose when to exercise the option, [defendant] cannot benefit from that uncertainty."). As the Ninth Circuit explained, the "essence" of the unilateral contract alleged by plaintiffs is the "general right to redeem their Camel Cash certificates, during the life of the program, for whatever rewards merchandise RJR made available, with RJR's discretion limited only by the implied duty of good faith performance." Sateriale, 697 F.3d at 788. Accordingly, if the contract obligated RJR to make non-tobacco merchandise available and RJR failed to do so, thus depriving plaintiffs of the opportunity to redeem such merchandise, RJR's actions would be the proximate—and sole—cause of this class-wide injury.

### (ii)    Damages

Rule 23(b)(3) is satisfied only if plaintiffs establish that "damages are capable of measurement on a classwide basis." Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1433 (2013). "Comcast stands for the proposition that plaintiffs' method of proving damages must be tied to their theory of liability." In re ConAgra Foods, Inc., 2014 WL 4104405 at 31 (citing Comcast, 133 S. Ct. at 1433).

Plaintiffs assert that determination of damages is subject to class wide proof, since damages may be determined with reference to "the value of the C-Notes upon RJR's breach." Mot. Class Cert. at 18, 21. Defendants respond that plaintiffs "present no evidence regarding the value of C-Notes before the alleged breach," Opp'n Class Cert. at 33, and that plaintiffs' "theory assumes that the value of the C-Note was a function of the value of reward for which the C-Note was redeemed," id. Plaintiffs respond that "the value that the jury places on C-Notes will be determined on a class-wide basis," and that the number of C-Notes held by any single class member can be determined through the claims administration process. Pls.'s Reply Class Cert. at 20.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**          **'O'**

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|----------|------------------------|------|-------------------|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

The Court finds that damages are capable of measurement on a class-wide basis, and agrees that many of RJR's concerns can be resolved through the claims process. Contrary to RJR's assertions, plaintiffs have presented evidence useful in determining the value of a C-Note prior to RJR's alleged breach. Specifically, plaintiffs suggest that $0.20 is a fair value, since during the final six months of the program RJR offered coupon booklets providing $50 off the purchase price of cigarettes for 250 C-Notes per booklet. Mot. Class Cert. at 5 (citing declaration of RJR's Rule 30(b)(6) witness Christy Canary-Gardner). Moreover, unlike in Comcast, this case will not require the use of complex regression models to measure the impact of anti-competitive conduct. See generally Comcast. The Court thus finds that common issues predominate concerning the damages calculation.

In light of the foregoing, the Court finds that common questions predominate as to plaintiffs' claim for breach of contract.

### (iii)   Choice of Law

RJR asserts that a nationwide class cannot be certified because the laws of the states vary with regard to unilateral contract formation, the statute of limitations, the admissibility of extrinsic evidence, and the implied covenant of good faith. Opp'n Class Cert. at 32-33; Rossum Decl. Exs. 1, 2, 4. In support, RJR provides the Court with a detailed analysis of the law of contracts and the implied covenant of good faith throughout the country. See generally Rossum Decl.

For example, with regard to the implied covenant of good faith, RJR correctly points out that in some states, not all contracts contain such a covenant. See, e.g., Bank One, Texas, N.A. v. Stewart, 967 S.W. 2d 419, 441 (Tex. App. 1998) ("Texas law, however, does not recognize an implied duty of good faith and fair dealing in every contract or business transaction."); Allison v. Union Hosp., Inc., 883 N.E.2d 113, 123 (Ind. Ct. App. 2008) ("Indiana courts have recognized an implied covenant of good faith and fair dealing in contract law, but generally only in limited circumstances involving employment contracts and insurance contracts."). Other states, while recognizing the existence of the implied covenant, require proof of a defendant's subjective intention in order to prove a claim for breach of the covenant. See, e.g., T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 924 (2010) (stating defendant's motive must be to "affect

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL      'O'

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|---|---|---|---|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

negatively the plaintiff's rights under the [contract]"); Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001) (requiring bad motive or intention to hold a party liable for breach of the implied covenant where that party was vested with discretionary decision making).  In opposition, plaintiffs assert that RJR has failed to identify why these differences in state law are material, but plaintiffs do not offer a meaningful, alternative choice of law analysis.  See, e.g., Pls' Reply Class Cert. at 23 ("These purported differences are either not relevant, arise from RJR's misstatement of the relevant laws, or are not sufficient to deny certification. At most, they can be addressed at trial through sub-classes.").[9]

It appears to the Court that RJR has indeed pointed to material differences in state contract law, particularly with regard to the implied covenant of good faith—the existence and interpretation of which controls the determination of whether RJR breached the contract.  In light of plaintiffs' failure to rebut defendants' showing of material differences among the laws of the fifty states, the Court cannot certify a nationwide class for plaintiffs' breach of contract claim.

Accordingly, the Court GRANTS plaintiffs' motion for class certification with regard to the breach of contract claim, but limits that class to California residents.

_____

[9] Plaintiffs also assert that the Court does not need to analyze each state's law, since the Ninth Circuit "stated that the parties agreed that plaintiffs' claims . . . were governed by California law . . . ."  Pls' Reply Class Cert. at 20-21 (citing Sateriale, 697 F.3d at 784).  Although the Ninth Circuit did indeed state that the parties' agreed to the application of California law, during oral argument RJR disputed any such agreement. Having reviewed the parties' appellate briefing and record on appeal, the Court cannot find any indication that the parties agreed to apply California law—let alone that they agreed to forego choice of law analysis at the class certification stage.  Moreover, the fact that the Ninth Circuit applied California law to plaintiffs' appeal does not render a choice of law analysis on a motion for class certification unnecessary; rather, it indicates that in order to certify a nationwide class, the laws of other states must not differ materially from the law of California.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL          'O'

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|---|---|---|---|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

#### b.    Promissory Estoppel

The Court concludes that individualized questions predominate with regard to plaintiffs' claim for promissory estoppel.  Under California law, the elements of promissory estoppel are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) the reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance.  Sateriale, 697 F.3d at 792 (citing U.S. Ecology, Inc., 129 Cal. App. 4th at 901)).  Unlike other claims, which carry a presumption of reliance, and the breach of contract claim, which has no reliance requirement, the law of promissory estoppel requires proof of reliance and does not presume that such reliance exists.  Thus, determining whether any given member relied on RJR's alleged promise to make non-tobacco merchandise available would require an inquiry into each class member's state of mind.  Such individualized inquiries would undermine any efficiencies that might be achieved by adjudicating this claim on a class-wide basis.

Accordingly, the Court DENIES plaintiffs' motion to certify a class based on the promissory estoppel claim.

#### 2.    Superiority

Rule 23(b)(3) sets forth four relevant factors to consider in determining whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  These factors include:

(A)    the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)    the likely difficulties in managing a class action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

Id.  "[C]onsideration of these factors requires the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis." Zinser, 253 F.3d at 1190 (9th Cir. 2001) (internal quotation marks and citation omitted).

Plaintiffs assert that "[g]iven the relatively small size of each class member's claim at issue," a class action is the only method of resolving these claims.  Mot. Class Cert. at 21.  Further, plaintiffs contend that individually litigating each class member's claims would burden the judiciary.  Id.  Defendants do not directly respond to plaintiffs' superiority arguments; instead they assert that plaintiffs cannot meet the superiority requirement for the same reasons they cannot satisfy predominance.  Opp'n Class Cert. at 33-35.

The Court finds that class litigation is superior to other methods of adjudication in this case.  First, given that plaintiffs suggest that each C-Note is worth only $0.20, "there is no realistic alternative to a class action in this case, making a class action understandably the superior method of adjudication."  Wiener v. Dannon Co., Inc., 255 F.R.D. 658, 672 (C.D. Cal. 2009).  Second, adjudicating class claims will be significantly less burdensome than if the matter were prosecuted individually.  See Menagerie Prods. v. Citysearch, 2009 WL 3770668, at *19 (C.D. Cal. Nov. 9, 2009) (concluding that "it does not appear that any members of the class have commenced any other litigation concerning the controversy alleged herein" and "concentrating the litigation in this Court will allow it to proceed in an efficient manner without risking inconsistent outcomes, and there is no reason to think that this is an undesirable forum to litigate these claims").  Accordingly, the Court finds that the superiority requirement of Rule 23(b)(3) is satisfied.

For the reasons stated above, the Court finds that plaintiffs have satisfied the requirements of Rule 23(b)(3).

### E.    Appointment of Class Counsel

Rule 23(g)(1) requires the Court to appoint class counsel.  Rule 23(g) provides, inter alia, that courts must consider the following factors in appointing class counsel:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**            **'O'**

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|----------|------------------------|------|-------------------|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

(i)   the work counsel has done in identifying or investigating potential claims in the action;

(ii)   counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii)   counsel's knowledge of the applicable law; and

(iv)   the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g).

The Court is satisfied that plaintiffs' co-counsel of record, Glancy, Binkow & Goldberg LLP and Bragar, Eagel & Squire, PC meet the criteria of Rule 23(g) and should serve as co-class counsel. First, both firms have represented plaintiffs throughout this litigation. Second, both firms have significant experience in litigating class actions and otherwise satisfy the requirements of Rule 23(g). See Godino Decl. Ex. A; Squire Decl. Ex. S. Finally, it appears that both firms have sufficient resources to vigorously represent the class. See id.

Glancy, Binkow & Goldberg LLP and Bragar, Eagel & Squire, PC are hereby appointed class counsel pursuant to Rule 23(g).

## VI.   CONCLUSION

In accordance with the foregoing, plaintiffs' motion for class certification is GRANTED in part and DENIED in part. The following class is hereby certified:

All persons in **California** who, as adult smokers, were assigned registration numbers by RJR, collected C-Notes, and held C-Notes as of October 1, 2006.

Exclusions: Defendant, its parents, subsidiaries, affiliates, officers and directors are excluded from the classes. Also excluded are employees of the Court, including, but not limited to, judges, magistrate judges, clerks, and court staff and personnel of the United States District Courts of the Central District of California, the United States Court of Appeals for the Ninth Circuit, and the United States Supreme

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**        **'O'**

| Case No. | 2:09-cv-08394-CAS(SSx) | Date | December 19, 2014 |
|---|---|---|---|
| Title | AMANDA SATERIALE ET AL. V. RJ REYNOLDS TOBACCO CO. ET AL. | | |

Court; their spouses or significant others and any minor children living in their households and any other persons within a third degree of relationship to any such federal judge; and finally, the entire jury venire called to for jury service in relation to this lawsuit.  Any attorneys or other or other employees of any law firms hired, retained, and/or appointed by or on behalf of the named plaintiffs to represent the named plaintiffs and any/or proposed class members or proposed class in this lawsuit are excluded as well.

The Court hereby appoints Glancy, Binkow & Goldberg LLP and Bragar, Eagel & Squire, PC to serve as class counsel pursuant to Rule 23(g), and appoints California-residents Fred Javaheri, Dan Polese, and Heather Polese to serve as class representatives.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |