Marc K. Callahan (State Bar No. 156616)
John A. Vogt (State Bar No. 198677)
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA 92612.4408
Telephone: +1.949.851.3939
Facsimile: +1.949.553.7539
Email: javogt@jonesday.com

Geoffrey K. Beach (Admitted *Pro Hac Vice*)
Howell A. Burkhalter (Admitted *Pro Hac Vice*)
hburkhalter@wcsr.com
WOMBLE CARLYLE SANDRIDGE & RICE LLP
One West Fourth Street
Winston-Salem, NC 27101
Telephone: (336) 721-3504
Facsimile: (336) 733-8437

Attorneys for Defendant
R.J. REYNOLDS TOBACCO CO.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMANDA SATERIALE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>R.J. REYNOLDS TOBACCO CO.,<br><br>Defendant. | CASE No. CV 09 08394 CAS (SSx)<br><br>**REPLY IN SUPPORT OF R.J. REYNOLDS TOBACCO CO.'S MOTION TO CERTIFY FOR INTERLOCUTORY APPEAL THE COURT'S ORDER DENYING REYNOLDS' MOTION FOR SUMMARY JUDGMENT**<br><br>Courtroom: 5<br>Before: Hon. Christina A. Snyder<br>Date: June 22, 2015<br>Time: 10:00 a.m. |

**REYNOLDS' REPLY IN SUPPORT OF MOTION TO CERTIFY INTERLOCUTORY APPEAL**

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 3

    I.    WHETHER OFFEREES CAN ACCEPT AN OFFER TO ENTER A UNILATERAL CONTRACT WITHOUT COMPLETING ALL OF THE REQUESTED ACTIONS CALLED OUT IN THE OFFER IS A CONTROLLING QUESTION OF LAW. ............................................................................... 3

    II.   THERE ARE SUBSTANTIAL GROUNDS FOR DISAGREEMENT WITH THE COURT'S RESOLUTION OF THIS CONTROLLING LEGAL QUESTION. ................................... 10

    III.  ALLOWING AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE TERMINATION OF THIS LITIGATION. ............................................................................. 12

CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**CASES**

*CSI Elec. Contractors, Inc. v. Zimmer America Corp.*,
  2013 WL 1249021 (C.D. Cal. Mar. 25, 2013) ........................................................ 5

*In re Cement Antitrust Litig.*,
  673 F.2d 1020 (9th Cir. 1981) .............................................................................. 4

*In re Novatel Wireless Secs. Litig.*,
  2013 U.S. Dist. LEXIS 164725 (S.D. Cal. Nov. 19, 2013) .................................. 4

*Nina v. Providence College*,
  844 F. Supp. 77 (D.R.I. 1994) .............................................................................. 6

*Rollins v. Dignity Health*,
  No. 13-CV-01450, 2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) ..................... 12

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ........................................................................ *passim*

*Starlite Ltd. P'ship v. Landry's Restaurants, Inc.*,
  780 N.W.2d 396 (Minn. Ct. App. 2010) .............................................................. 6

*State v. Agostini*,
  139 Cal. App. 2d 909 (1956) ................................................................................ 5

*Steiner v. Thexton*,
  48 Cal.4th 411, 106 Cal.Rptr.3d 252, 226 P.3d 359 (2010) ............................. 5, 7

*SunTrust Mortgage, Inc. v. Giardina*,
  321 P.3d 36 (Kan. Ct. App. 2014) ........................................................................ 6

# TABLE OF AUTHORITIES
## (Cont'd)

**PAGE**

**STATUTES**

28 U.S.C. § 1292 ............................................................................................... 2, 4

**OTHER AUTHORITIES**

1 *Corbin on Contracts* § 2.14 (1993) ........................................................................ 6

Restatement (Second) of Contracts § 41 (1981) .......................................................... 6

1 Samuel Williston, *A Treatise on the Law of Contracts* § 5:5 (1990) ....................... 6

**REYNOLDS' REPLY IN SUPPORT OF MOTION TO CERTIFY INTERLOCUTORY APPEAL**

# INTRODUCTION

This is not a typical case. After the Court dismissed their complaint for the third time, plaintiffs persuaded the Ninth Circuit to revive their Third Amended Complaint only by making particular representations about their legal theory in the case. That is, on appeal, plaintiffs argued, and the Ninth Circuit found that they had alleged, that Reynolds had committed a breach of contract by failing to offer "*any*" Camel Cash rewards during the period October 1, 2006 through March 31, 2007:

> The plaintiffs do not claim that they were entitled to particular merchandise, but that RJR was required to make reasonable quantities of rewards merchandise available during the life of the Camel Cash program — a duty RJR allegedly breached by failing to make *any* merchandise available after October 1, 2006.

*Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 789 (9th Cir. 2012) (emphasis in original). On remand, however, plaintiffs fundamentally changed their allegations. Plaintiffs now maintain that Reynolds breached by failing to offer *non-tobacco* merchandise during that same time period.

Plaintiffs do not deny that they altered their case in this way. (Opp. at 10.) Nor, could they credibly do so: Their lead counsel declared, under penalty of perjury, that it was only *after* discovery had commenced post-remand that he learned that Reynolds had offered only tobacco-related merchandise during the final Camel Cash promotion period, *see* Dkt. No. 119, ¶ 6—thus confirming that the allegations in the Third Amended Complaint, drafted *years before* discovery commenced, could not possibly have put at issue the claim that Reynolds had breached by offering only tobacco products. So when this Court, post-remand, ruled on Reynolds' motion for summary judgment, it did so on the basis of a claim that materially differs from that plaintiffs presented to the Ninth Circuit. It is this

unusual change in legal theories that has created the conflict between the Court's decision and that of the Ninth Circuit.

This context demonstrates why interlocutory review of the Court's summary-judgment denial is not just appropriate, but imperative. Plaintiffs secured the revival of their complaint—their fourth in this case—on the basis of allegations and theories that they abandoned post-remand. If the Ninth Circuit would not have revived the case on those allegations and theories, it should be given the opportunity to say so at the earliest possible juncture—and certainly before the parties and the Court invest vast resources in a lengthy trial of this matter.

All three factors set forth in 28 U.S.C. § 1292(b) are met, thus confirming why it is appropriate to certify an interlocutory appeal:

- <u>First</u>, the question at issue is a "controlling question of law." That question is not the fact-bound straw man that plaintiffs erect in their opposition. (Opp. at 2.) Rather, the legal question is whether a unilateral contract can be formed under California law where the offeree fails to perform each act requested by an offeror. That legal question has direct implications for this case, given that none of the named plaintiffs completed the performance Reynolds' offer requested by tendering C-Notes for redemption, contrary to plaintiffs' representations to this Court and the Ninth Circuit. The question itself is a legal one of "'general relevance to other cases'" involving unilateral contracts. (Opp. at 4-5 (quoting *McFarlin v. Conseco Servs.*, 381 F.3d 1251, 1259 (11th Cir. 2004))). And, a Ninth Circuit decision resolving this question in Reynolds' favor would obviously be controlling, as it would bring the case to an immediate end.

- <u>Second</u>, there is "substantial ground for difference of opinion" over the Court's resolution of this controlling legal question. It is difficult to imagine a more salient difference of opinion than one that emerges between a District Court and Circuit Court within the very same case. That divergence is most likely entirely attributable to plaintiffs' post-remand shift in their legal theory of the case,

2

and confirms the need to give the Ninth Circuit an opportunity to address the case as plaintiffs now present it.  And, even if plaintiffs are correct that the Ninth Circuit did not mean what it expressly stated in holding redemption is a necessary prerequisite to contract formation, it is inappropriate to simply assume—as plaintiffs urge the Court to do—that the Ninth Circuit would have reached the same conclusion even if plaintiffs *had* been consistent in their allegations and legal theories.  (Opp. at 10.)  This case should not proceed to trial on the basis of such unsupported assumptions, particularly inasmuch as there are substantial reasons to believe that the Ninth Circuit's opinion would have differed if it had been confronted with the claims plaintiffs now seek to pursue.

• Third, certifying an interlocutory appeal would "materially advance the ultimate termination of th[is] litigation."  If, as it stated in its opinion in *Sateriale*, the Ninth Circuit were to reiterate that plaintiffs were required to accept Reynolds' offer by "redeem[ing] their [Camel Cash] certificates in accordance with the catalogs' terms," *Sateriale*, 697 F.3d at 787, plaintiffs would no longer have a viable claim for relief.

For these reasons, Reynolds respectfully requests that the Court certify its order denying summary judgment for interlocutory appeal.

## ARGUMENT

### I. WHETHER OFFEREES CAN ACCEPT AN OFFER TO ENTER A UNILATERAL CONTRACT WITHOUT COMPLETING ALL OF THE REQUESTED ACTIONS CALLED OUT IN THE OFFER IS A CONTROLLING QUESTION OF LAW

The question over which Reynolds seeks to pursue in an interlocutory appeal is a controlling question of law:  In order to form a unilateral contract, must offerees complete the entire performance called out by the offeror to accept the

offer?[1] In this case, an answer in the affirmative would immediately end the litigation: Since *none* of the named plaintiffs redeemed their C-Notes—one of the three specific actions the Ninth Circuit in *Sateriale* stated was required to accept Reynolds' offer—requiring such performance would doom plaintiffs' claims. This question is thus "controlling," as required by section 1292(b). *See, e.g., In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981) (a question is "controlling" when "allowing an interlocutory appeal would avoid protracted and expensive litigation").

Plaintiffs incorrectly argue that an issue only qualifies for interlocutory review if it is a "'pure' or 'abstract' issue[] of law," and criticize Reynolds for supposedly "misstat[ing] th[is] test." (Opp. at 4, n.1.) The Ninth Circuit has never set forth this requirement of a "pure" question of law. "The Ninth Circuit has not expressly defined the term 'question of law,'" *In re Novatel Wireless Secs. Litig.*, 2013 U.S. Dist. LEXIS 164725, *5 (S.D. Cal. Nov. 19, 2013), and has said only that "all that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. That is precisely the test that Reynolds identified in its motion (Memo. at 3), and there can be no doubt that the question Reynolds has raised satisfies that test since it would resolve this case.

Plaintiffs cannot escape this conclusion by relying upon this Court's statement, in the alternative, that Reynolds "would still be required to perform under the contract" even if redemption was a necessary prerequisite to contract-

---

[1] Plaintiffs mischaracterize Reynolds' motion when they claim that the question Reynolds seeks to pursue on appeal is "whether the Court correctly interpreted" the Ninth Circuit's decision in this case. (Opp. at 6.) Although the tension between this Court's and the Ninth Circuit's decisions underscore the room for disagreement and the need for immediate review, this is not the relevant "question of law" for purposes of § 1292(b).

4
**REYNOLDS' REPLY IN SUPPORT OF MOTION TO CERTIFY INTERLOCUTORY APPEAL**

formation. (Dkt. No. 136 at 13.) That conclusion, like the Court's holding that redemption is not required, is premised on the understanding that plaintiffs could accept Reynolds' offer without completing each act called out by the offer. But if the completion of the performance the offeror requested is a necessary prerequisite to contract-formation—in this case, via redemption of C-Notes in accordance with the catalogs terms—plaintiffs' failure to satisfy the performance requested in the offer similarly dooms their claims.[2]

Moreover, it is no answer to argue that plaintiffs' part performance, through the purchasing of Camel cigarettes and the saving of the C-Notes affixed to those packages, rendered Reynolds' offer irrevocable. Under California law, an offeree's part performance only means that the offeree provided the offeror with sufficient consideration to *hold open* the offer for its term to allow the offeree the opportunity to complete the requested performance. *Steiner v. Thexton*, 48 Cal.4th 411, 106 Cal.Rptr.3d 252, 226 P.3d 359, 368 (2010). The offeree still must *accept* the offer, in accordance with the offer's terms, *within the time period prescribed by the offer*. *Id*.; *see also State v. Agostini*, 139 Cal. App. 2d 909, 914 (1956) ("Williston states that if an option makes an offer for a unilateral contract, performance must be *tendered* (emphasis in original) within the stated period) (citing Williston on Contracts, 853). Thus, even assuming, *arguendo*, that Reynolds' offer was contained in the C-Notes and, moreover, was for non-tobacco merchandise (as specified in the catalogs), the C-Notes specifically instructed plaintiffs to "Check catalog for expiration date" (Dkt. No. 136 at 11), meaning that plaintiffs had a

---

[2] Plaintiffs' argument that, even if redemption was required, "the jury would still need to determine whether RJR breached the implied covenant of good faith and fair dealing" (Opp. at 12), is incorrect. Absent redemption, plaintiffs would not have formed a contact. Absent a contract, the implied covenant does not exist. *CSI Elec. Contractors, Inc. v. Zimmer America Corp.*, 2013 WL 1249021, at * 4 (C.D. Cal. Mar. 25, 2013).

1 specified window of time within which to accept Reynolds' offer by tendering their
2 C-Notes for redemption for rewards offered pursuant to the catalog then in effect.
3 "Part performance makes an outstanding offer irrevocable, it does not revive an
4 expired offer." *Nina v. Providence College*, 844 F. Supp. 77, 88 (D.R.I. 1994); *see*
5 *also, e.g.*, *SunTrust Mortgage, Inc. v. Giardina*, 321 P.3d 36 (Kan. Ct. App. 2014)
6 ("When an offer designates a time for acceptance, the offeree must accept it within
7 that time period to form a contract."); *Starlite Ltd. P'ship v. Landry's Restaurants,*
8 *Inc.*, 780 N.W.2d 396, 400 (Minn. Ct. App. 2010) ("[A]n offer expires on the date it
9 specifies and cannot be accepted after that deadline."). This is black-letter law.[3]

10      That C-Notes did not have a printed expiration date obviously does not mean
11 that they could be used in perpetuity; instead, because the face of the C-Notes
12 specifically instructed consumers to "Check catalog for expiration date,"
13 a consumer could not have had any expectation that C-Notes could be used for
14 rewards other than those in the then-current catalog. This inescapable conclusion is
15 cemented by plaintiffs' concession that Reynolds never promised consumers that
16 Reynolds would issue future Camel Cash catalogs beyond the one then in effect.
17 *See Sateriale*, 697 F.3d at 788 ("The offer did not specify when future catalogs
18 would be issued . . . ."); *see also* Dkt. No. 91, Ex. 6 [Deposition of Heather Polese]
19 at 59:7-11 ("Q. All right. Did my client ever promise you that there would always
20 be a written catalog available? A. Now it says that -- no, there was no promise.");
21 *id.*, Ex. 5 [Deposition of Jackie Warren] at 24:1-5 ("Q. Did RJR ever promise you
22 that there would always be future catalogs? MR. SQUIRE: Objection. You can

---

[3] *See* Restatement (Second) of Contracts § 41 (1981) (offeree's power of acceptance is terminated at time specified in offer); 1 Samuel Williston, *A Treatise on the Law of Contracts* § 5:5 (1990) (offeror can specify time for acceptance, after which the offeree's ability to accept necessarily expires); 1 *Corbin on Contracts* § 2.14 (1993) (offer may specify time within which acceptance must occur, thereby limiting the offeree's power of acceptance).

answer. A. No."). Thus, plaintiffs, at the time they purchased Camel cigarettes and saved C-Notes, could not, as a matter of law, have had any contractual right or expectation that Reynolds would have offered a future catalog, let alone a future catalog containing *any*, much less non-tobacco, rewards, as that expectation would be objectively unreasonable—colliding with the express terms of the C-Notes (which directed consumer to "Check catalog for expiration date"), and being unsupported by any consideration. Instead, at the time of their part performance, their only contractual expectation could have been that Reynolds would keep the then-current catalog in effect though its expiration date, and would expend time, money and resources to have a sufficient quantity of the rewards offered in that catalog available for redemption with those C-Notes.

This make perfect sense: If past consideration—*i.e.*, the purchasing of Camel cigarettes during the time within which a prior catalog was in effect—required Reynolds to provide future Camel Cash catalogs, that position, taken to its logical extension, would have required Reynolds to provide Camel Cash catalogs in perpetuity because, by definition, that part performance, pursuant to *Steiner*, would have bound Reynolds to hold open the offer to allow individuals to complete performance—*i.e.*, redeem C-Notes—forever (or at least until all C-Notes were redeemed). In other words, if past consideration compelled Reynolds to issue future Camel Cash catalogs, Reynolds would never have been able to end Camel Cash.

But Reynolds indisputably could end Camel Cash—*i.e.*, cease offering catalogs with rewards for redemption. *See Sateriale*, 697 F.3d at 790 ("Plaintiffs do not dispute that defendant had the right to terminate the Camel Cash program."). In fact, because every catalog had a printed expiration date, every person participating in Camel Cash was expressly notified that the program could end upon

7

the termination of the catalog then in effect.[4]  If an individual, for whatever reason, chose not to redeem their C-Notes before the then-current catalog expired—*i.e.*, complete the performance Reynolds' offer requested—they assumed the risk that Reynolds may not offer another catalog.

It is an undisputed fact that, in consideration for individuals continuing to purchase Camel cigarettes, Reynolds, from October 1991 through September 2006, maintained reasonable quantities of Camel Cash rewards for individuals to redeem with their C-Notes before the catalogs published in that time period expired. Thus, Reynolds could have ceased Camel Cash on September 30, 2006, with the expiration of what became the penultimate Camel Cash catalog, without any future liability or obligations to plaintiffs or the class they represent.  To put it in terms of offer and acceptance, plaintiffs did not provide Reynolds with any consideration to offer a future catalog with Camel Cash rewards when the penultimate catalog expired on September 30, 2006.  Thus, whatever C-Notes plaintiffs acquired through purchasing Camel cigarettes and saving C-Notes prior to October 1, 2006 could not have rendered Reynolds' offer (*i.e.*, the C-Notes) "irrevocable" as to rewards that might—or might *not*—be offered in the future.

It does not matter that some C-Notes were still available in the stream-of-commerce after October 1, 2006.  On October 1, 2006, Reynolds published the final Camel Cash catalog offering cigarettes and coupons for cigarettes.  At that point, it would have been objectively unreasonable for plaintiffs to expect that continued performance—*i.e.*, purchasing and saving C Notes post-October 1, 2006—would require Reynolds to offer non-tobacco rewards for redemption (as Reynolds had

---

[4] This notice is different than the term contained in the catalogs that said Reynolds could terminate at any time without notice.  The former provided consumers with clear notice that there may not be a future Camel Cash catalog issued beyond the one then in effect.  The latter notified consumers that Reynolds could end Camel Cash before the catalog then in effect reached its expiration date.

publicly announced on October 1, 2006 that such types of rewards would not be offered). That being the case, Reynolds could not have "prevented" plaintiffs from using their C-Notes to obtain non-tobacco goods during the period October 1, 2006 through March 31, 2007 because, with the expiration of the penultimate catalog on September 30, 2006, Reynolds did not have any obligation to provide a future catalog, let alone future rewards.

Given the foregoing, it cannot possibly be said that Reynolds breached by offering something of value (cigarettes and coupons for cigarettes) on October 1, 2006, but would not have breached had Reynolds offered nothing at all, and simply let Camel Cash expire on September 30, 2006 by its terms. Simply put, it cannot be a breach to offer something as opposed to nothing. Thus, that Reynolds offered rewards during the period October 1, 2006 through March 31, 2007, albeit tobacco-types of rewards, cannot excuse plaintiffs' failure to redeem C-Notes during that time period because, having been notified that Camel Cash may end on September 30, 2006, plaintiffs could not have reasonably expected that Reynolds would have provided any rewards in a future time period.[5]

Finally, even if plaintiffs had been correct that Reynolds must identify a "pure" legal question in order to secure interlocutory review, the question at issue here would still clear that threshold. The question of contract law upon which Reynolds seeks leave to pursue appeal—whether a unilateral contract can be formed without the offeree completing the performance requested by the offeror within the time period prescribed by the offer—exists on a "'high enough level of

---

[5] But some class representatives did not even look to see what types of rewards Reynolds offered during the period October 1, 2006 through March 31, 2006. Thus, for these plaintiffs, and the members of the class like them, it would not have mattered if Reynolds had offered non-tobacco goods during this time period because they were not going to redeem anyway and, hence, lost no "opportunity" to redeem.

abstraction'" to speak to "'other cases in the same area of law.'" (Opp. at 4-5 (quoting *McFarlin*, 381 F.3d at 1259).) Its resolution would necessarily affect other cases involving the formation of unilateral contracts, and would have particular relevance in cases involving similar customers-rewards programs, which are now prevalent in all aspects of modern life (e.g., gas, groceries, credit cards, hotels, coffee, and other consumer goods retailers). Indeed, in their prior appeal to the Ninth Circuit, plaintiffs highlighted the relevance of this case to other disputes involving customers-rewards programs. (Appellants' Opening Brief at 2, *Sateriale v. R.J. Reynolds Tobacco Co.*, No. 11-55057 (9th Cir. 2012).) The more important point, however, is that the Ninth Circuit's resolution of this question would directly impact—and likely end—*this* litigation, which is why it makes perfect sense to allow the Ninth Circuit to resolve that question now rather than waiting until after a lengthy trial (and all the costs that come with it).

## II.  THERE ARE SUBSTANTIAL GROUNDS FOR DISAGREEMENT WITH THE COURT'S RESOLUTION OF THIS CONTROLLING LEGAL QUESTION

To establish substantial grounds for disagreement over the Court's resolution of the controlling legal question at issue here, one need look no further than the Ninth Circuit's decision in this very case. In *Sateriale*, the Ninth Circuit held that plaintiffs had "adequately alleged the existence of an offer to enter into a unilateral contract, whereby RJR promised to provide rewards to customers who purchased Camel cigarettes, saved Camel Cash certificates *and redeemed their certificates in accordance with the catalogs' terms*." *Sateriale*, 697 F.3d at 787 (emphasis added). In ruling on Reynolds' motion for summary judgment, however, this Court held that plaintiffs were required to take only the first two of those steps. (Dkt. No. 136 at 12.) Although the Court has set forth its reasons for omitting the third step, this

divergence—which implicates the law-of-the-case doctrine—strongly counsels in favor of putting the case back in front of the Ninth Circuit now.[6]

Trying to disprove this divergence, plaintiffs simply recite their preferred interpretation of the Ninth Circuit's opinion in an attempt at proving that the Ninth Circuit did not mean what it said when it held that the offer alleged in this case required redemption. (Opp. at 8-9.) But what is most notable about this effort is what plaintiffs *do not* say—specifically, they do not appear to dispute that they had pursued a fundamentally different set of allegations and legal theory when this case was before the Ninth Circuit. Instead, the most plaintiffs can offer is their insistence that the Ninth Circuit would not "have reached a different result had plaintiff[s] alleged, that although RJR did not make any merchandise available after October 1, 2006, RJR had made extremely limited quantities of tobacco products … available during the final six months of the program." (Opp. at 10.)

Even assuming, *arguendo*, that the Ninth Circuit did not hold that redemption was a required act to accept Reynolds' offer, there is no reason to assume, as plaintiffs do in their opposition brief, that the Ninth Circuit still would have reversed this Court's dismissal of plaintiffs' breach of contract claim:

• <u>First</u>, the Ninth Circuit's decision supports precisely the opposite conclusion, given that the court repeatedly relied upon plaintiffs' allegation that Reynolds had not offered "*any*" rewards during the final promotion and found, based upon that allegation, that such an alleged breach was "readily discernible." *See Sateriale*, 697 F.3d at 798 (noting that Reynolds "allegedly breached [its] contracts] by failing to make *any* merchandise available after October 1, 2006" (emphasis added)); *id.* at 784 (plaintiffs "allege that RJR breached a contract by

---

[6] Plaintiffs incorrectly state that Reynolds' motion simply "identifies other areas"—distinct from the steps required for contract-formation—to argue that there is substantial ground for disagreement with the Court's decision. (Opp. at 9.) Plaintiffs make no attempt at identifying any such "other areas."

refusing to redeem C–Notes during the six months preceding program termination."); *id.* at 793 ("[U]nder the allegations of the complaint, RJR ceased accepting C–Notes for redemption as soon as it delivered the October 1 announcement …."). These statements of plaintiffs' counsel before the Ninth Circuit are far more reliable than plaintiffs' *ipse dixit* post-hoc explanation of the Ninth Circuit's view of the case, and undermine any suggestion that the court's decision would have come out the same way if plaintiffs had presented their case in the same way they do now.

• <u>Second</u>, as Reynolds always has maintained, the most plausible reading (and plain meaning) of the Ninth Circuit's decision is that it establishes redemption as a necessary prerequisite to contract-formation. But even if the Ninth Circuit did not mean what it said, its decision was premised on the understanding that Reynolds had not offered "*any*" rewards during the final promotion. And, in that scenario, there arguably would be no point in requiring plaintiffs to redeem C-Notes, since Reynolds could not have performed in any manner. But given that, as plaintiffs now concede, Reynolds *did* offer rewards (cigarette "art packs" and coupons), the redemption requirement takes on greater significance and very well likely would alter the Ninth Circuit's view of the case. Plaintiffs should not be permitted to rely upon one theory to secure the reinstatement of their case, another theory to survive summary judgment, and then simply assure the Court that this divergence is of no consequence. Instead, this divergence only confirms the need for the Ninth Circuit to review this case, as plaintiffs now present it, before the parties incur the time and expense of a trial.

### III.   <u>ALLOWING AN IMMEDIATE APPEAL WILL MATERIALLY ADVANCE THE TERMINATION OF THIS LITIGATION</u>

Certifying an interlocutory appeal could materially advance the termination of this case. As Reynolds has explained—and as plaintiffs do not dispute—this requirement "overlap[s] significantly" with the first requirement, of a controlling

12

legal question. *Rollins v. Dignity Health*, No. 13-CV-01450, 2014 WL 6693891, *4 (N.D. Cal. Nov. 26, 2014). And, as Reynolds has shown, a Ninth Circuit decision holding that plaintiffs were required to accept Reynolds' offer through redemption of C-Notes would defeat plaintiffs' claims. This requirement is thus easily satisfied.

Unable to dispute this, plaintiffs argue that this Court's alternative bases for its holding—*i.e.*, (1) Reynolds' offer becoming irrevocable, and (2) Reynolds "preventing" plaintiffs from using C-Notes for non-tobacco goods during the period October 1, 2006 through March 31, 2007—defeats this prerequisite to an interlocutory appeal. But as demonstrated above, neither saves plaintiffs' claims as construed by the Ninth Circuit in *Sateriale*. Thus, this requirement prerequisite to an interlocutory appeal is satisfied.

## **CONCLUSION**

Before a jury is impaneled, and the parties incur the substantial time and expense of a trial, the Ninth Circuit ought to be given the opportunity to address whether summary judgment should have been entered in Reynolds' favor due to plaintiffs' uncontroverted failure to accept Reynolds' offer by "redeem[ing] their certificates in accordance with the catalogs' terms." *Sateriale*, 697 F.3d at 787. Whether an offeree must fulfill the entire performance the offeror requests in the time period prescribed by the offer to form a unilateral contract is a controlling question of law on which there is substantial grounds for disagreement, and whose resolution would materially advance the termination of this litigation. It is precisely the type of legal issue over which Congress has authorized interlocutory appeal. Thus, Reynolds respectfully requests that the Court certify for interlocutory appeal its order denying Reynolds' motion for summary judgment.

Dated: June 8, 2015

JONES DAY

By: */s/ John A. Vogt*
John A. Vogt

Attorneys for Defendant
R.J. REYNOLDS TOBACCO CO.